TOOLEY and wife, and others, Appellants, v. O'CONNELL and others, Respondents.

*No. 75–408. Argued March 29, 1977.—Decided May 3, 1977.*
(Also reported in 253 N. W. 2d 335.)

424

For the appellants there was a brief and oral argument by *Robert E. Sutton* of Milwaukee, and oral argument by *David L. Walther*, of counsel, of Milwaukee.

For the respondents the cause was argued by *Patrick B. McDonnell*, assistant city attorney, with whom on the brief was *James B. Brennan*, city attorney, *Bronson C. La Follette*, attorney general, and *Allan P. Hubbard*, assistant attorney general.

Briefs amici curiae were filed by *Bruce Meredith* of Madison for Wisconsin Education Association Council; and by *David L. Walther* of Milwaukee for Wisconsin Civil Liberties Union Foundation, Inc.

CONNOR T. HANSEN, J. The plaintiffs-appellants are all residents of and property owners/taxpayers in the city of Milwaukee. Some have children enrolled in the public school system of Milwaukee; some do not. The defendants-respondents are various public officers invested by law with the implementation of property tax assessment, levy and collection, part of which tax revenues finance the public school system in Milwaukee. Suit was commenced against defendants, O'Connell,

Brennan, Busalacchi, Connors, Darrow, Dinges, Farley, Larson, McSweeney, New, Pfeiffer, Potter, Radtke and Stacy, individually, and as members of the board of school directors of the city of Milwaukee; Adamany, as secretary of the Wisconsin Department of Revenue;[1] Schmidt, as tax commissioner of the city of Milwaukee; Krueger, as city treasurer; and McCann, as city comptroller.

The plaintiffs commenced action pursuant to sec. 269.56, Stats. 1973,[2] for a judgment declaring the statutory plan for the financing of the Milwaukee public schools as set forth in ch. 119, particularly sec. 119.46, unconstitutional.[3] They alleged, generally, that the statutes which authorize the assessment, levy, collection and distribution of property taxes for the financing of the Milwaukee public schools violate their constitutional rights under art. I, sections 1, 9 and 17; art. VIII, sec. 1; and art. X, sections 2, 3, 4 and 5, of the Wisconsin Constitution.

The trial court sustained the demurrer of the defendants on the grounds that the complaint failed to state a cause of action.

The issue presented is whether the trial court erred in sustaining the demurrer.

Chapter 119, Stats., provides in part for the local financing of the Milwaukee school system. Operational control of the system rests with the board of school directors (hereinafter the board), the duties of which are set forth in sec. 119.16. One such duty, relating to finance, is stated in sec. 119.16 (8), Stats.:

"*(8)* BUDGET. (a) Annually before adopting its budget for the next fiscal year and at least 5 days be-

---

[1] Adamany was subsequently dismissed as a party defendant.

[2] Sec. 269.56, Stats., renumbered to sec. 806.04, effective January 1, 1976, 67 Wis.2d 718, 721.

[3] The attorney general was served, as required by sec. 269.56 (11), Stats. 1973.

fore transmitting its completed budget under par. (b), the board shall hold a public hearing on the proposed school budget at a time and place fixed by the board. At least one week before the public hearing, the board shall publish a class 1 notice, under ch. 985, of the public hearing.

"(b) The board shall transmit its completed budget to the common council on or before November 1 of each year on forms furnished by the auditing officer of the city. Such completed budget shall be published with the budget summary under s. 65.04(2) and budget under s. 65.05(7)."

Sec. 119.46, Stats., provides:

*"119.46 Taxes for school operations fund.* As part of the budget transmitted annually to the common council under s. 119.16(8)(b), the board shall report the amount of money required for the next fiscal year to operate all public schools in the city under this chapter, to repair and keep in order school buildings and equipment, to make material improvements to school property and to purchase necessary additions to school sites. The common council shall levy and collect a tax upon all the property subject to taxation in the city, which shall be equal to the amount of money required by the board for the purposes set forth in this subsection, at the same time and in the same manner as other taxes are levied and collected. Such taxes shall be in addition to all other taxes which the city is authorized to levy. The taxes so levied and collected, together with the other funds provided by law and placed at the disposal of the city for the same purposes, shall constitute the school operations fund."

Chapter 119, Stats., contemplates a local school funding scheme whereby the board determines its financial needs for certain purposes; the board submits its budgetary needs to the common council; the common council levies and collects a property tax sufficient to meet those needs; and the city treasurer distributes the proceeds in accordance with sec. 119.50.

Sections 119.47, 119.48 and 119.49, Stats., also provide for the levy and collection of property tax by the

common council subsequent to the submission of a budget by the board or subsequent to other action taken by the board. In each case, except that presented by sec. 119.48, the levy and collection of the tax by the common council is mandatory upon the completion of the action taken by the board.

The complaint of the plaintiffs alleges in part:

"(a) The system of financing public education as heretofore set forth relies primarily upon local property tax and, therefore, produces a wide disparity in educational expenditure and thereby affords disparate educational facilities throughout the State of Wisconsin and taxes property owners at different rates throughout the State for the same public purpose.

"(b) The said statutes effectively nullify the authority constitutionally vested in the duly elected governing unit of the City of Milwaukee, to-wit: The Common Council of the City of Milwaukee—and arrogates said power to the defendants.

"(c) The said statutes establish a discriminatory tax burden imposed upon owners of real property as distinguished from persons who do not own real property and imposes upon the plaintiffs and all persons like situated who own real property the burden of financial support for the public schools of the City of Milwaukee."

In its memorandum decision sustaining the demurrer of the defendants, the trial court stated:

"The thrust of the complaint by the plaintiffs herein appears to be that the enforcement of and operation of Chapter 119 Wis. Stats. and Section 119.43 [sic 119.46] in particular violate various sections of the Wisconsin Constitution. In support of such reasoning the complaint sets forth conclusions rather than allegations of fact. The plaintiffs pray for a declaration that Chapter 119 is unconstitutional and [sic] that it provides for the mandatory levy and collection of property tax upon plaintiffs.

"A Demurrer does not admit erroneous conclusions drawn from well pleaded facts even though such con-

clusions resemble statements of fact. See *Northwestern Mutual Life Insurance Company v. State*, (1920), 173 Wis. 119, 180 N.W. 138. While on Demurrer a complaint is to be literally construed and such Demurrer admits all facts well pleaded, a Demurrer does not admit legal conclusions or the legal consequences asserted. The complaint appears to be replete with legal conclusions and not ultimate facts.

"The plaintiffs' complaint would better be addressed to the legislature of the State of Wisconsin for a redress if indeed any redress is called for.

"The Demurrer of the defendants is sustained on the grounds that plaintiffs' complaint fails to state a cause of action. The complaint is dismissed."

From our examination of the pleadings, it appears that the complaint sufficiently states that the plaintiffs are property owners/taxpayers in the city of Milwaukee; that the defendants are officials immediately responsible for carrying out the provisions of ch. 119, Stats., as they pertain to the financing of the Milwaukee school system and the taxing of the plaintiffs' property; and that the plaintiffs' property has been taxed pursuant to the provisions of ch. 119.

The legal conclusions contained in the complaint are those that the taxing provisions of ch. 119, Stats., violate the plaintiffs' constitutional rights in the manner described. While those conclusions are not admitted on demurrer, their existence is not fatal to this complaint. Were the legal conclusions setting forth the alleged constitutional violations fatal to a complaint challenged by demurrer in a declaratory judgment action, no plaintiff could ever challenge the constitutionality of a statute by declaratory judgment.

When a declaratory judgment action is brought attacking the constitutionality of a state statute, the plaintiff, to survive a demurrer, must initially allege the existence

of the statute and the fact that he is personally affected by it. The plaintiff must then further allege, or it must be readily inferable from his allegations, that he is affected to an extent so as to warrant the specific relief sought, *i.e.*, declaratory judgment. *See:* Borchard, *Declaratory Judgments*, (2d ed.), pp. 48–56. The allegations establishing the latter may necessarily be conclusory in nature.

The question raised by demurrer to a complaint in a declaratory judgment proceeding challenging the constitutionality of a statutory enactment is not in all ways similar to the question presented in the usual civil action. In the case before us, the trial court appears to have proceeded under the rules applicable to the usual civil action.

In *American Med. S., Inc. v. Mutual Fed. S. & L.*, 52 Wis.2d 198, 188 N.W.2d 529 (1971), this court stated, at p. 204:

"A demurrer to a complaint in a declaratory judgment action normally does not present the question whether the complaint states a cause of action but rather presents the question of whether the controversy is one which should be considered and heard on the merits. Consequently, an appeal from an order sustaining such a demurrer raises the question of whether the declaratory judgment action was properly used to adjudicate the plaintiff's claim. . . ."

A similar statement was made by this court in *Waukesha Memorial Hospital v. Baird*, 45 Wis.2d 629, 633, 173 N.W.2d 700 (1970):

". . . When there is demurrer to a complaint for a declaratory judgment, the question presented initially is not whether the complaint so states a meritorious cause of action that the plaintiffs should prevail on the merits if, in fact, the facts alleged are true, but rather it poses the question of whether the controversy is one

which should be considered and heard on the merits.
. . ."

*See also: Lister v. Board of Regents,* 72 Wis.2d 282,
306, 240 N.W.2d 610 (1976); *Rudolph v. Indian Hills
Estates, Inc.,* 68 Wis.2d 768, 771, 772, 229 N.W.2d 671
(1975).

While the granting or denying of relief in a declara-
tory judgment action is a matter within the sound dis-
cretion of the trial court, (*Pension Management, Inc. v.
DuRose,* 58 Wis.2d 122, 127, 205 N.W.2d 553 (1973);
*Selective Ins. Co. v. Michigan Mut. Liability Ins. Co.,*
36 Wis.2d 402, 408, 153 N.W.2d 523 (1967).) that dis-
cretion must be exercised within the confines of the
statutes and well-established precedent.

The statutory discretion arises when a judgment or
decree would not terminate the controversy. Sec. 269.-
56(6), Stats. Judicial discretion requires a determina-
tion of whether four conditions precedent to the proper
maintenance of a declaratory judgment action have been
met by the plaintiff.

In *State ex rel. La Follette v. Dammann,* 220 Wis. 17,
22, 264 N.W. 627 (1936), this court summarizing from
Borchard, *Declaratory Judgments,* pp. 26–57, set forth
the four conditions precedent to the proper maintenance
of a declaratory judgment action:

"(1) There must exist a justiciable controversy—that
is to say, a controversy in which a claim of right is
asserted against one who has an interest in contesting it.
 "(2) The controversy must be between persons whose
interests are adverse.
 "(3) The party seeking declaratory relief must have
a legal interest in the controversy—that is to say, a
legally protectible interest.

"(4) The issue involved in the controversy must be ripe for judicial determination. . . ."

These conditions precedent have been repeated numerous times by this court and are intended primarily to insure that a bona fide controversy exists and that this court in resolving the question raised will not be acting in a merely advisory capacity.[4]

*JUSTICIABLE CONTROVERSY:* The defendants argue that the plaintiffs are bound to lose on the merits of their constitutional claims and thus that no justiciable controversy is stated. The merits of the constitutional issues presented need not and should not be addressed at this stage of the proceedings. *Flood v. Board of Education,* 69 Wis.2d 184, 187, 230 N.W.2d 711 (1975). The merits of plaintiffs' cause of action do not determine its justiciability.

The statement setting forth the specific criteria in *State ex rel. La Follette, supra,* 22, contains its own definition of "justiciable controversy"; it must be a controversy in which a claim of right is asserted by the plaintiffs against the defendants who have an interest in contesting it. That definition has been amplified by this court as requiring the existence of present and fixed rights and refusing to determine hypothetical or future rights. *Pension Management, Inc., supra,* 128; *Skowron v. Skowron,* 259 Wis. 17, 19, 47 N.W.2d 326

---

[4] *Lister, supra,* 306; *State ex rel. Lynch v. Conta,* 71 Wis.2d 662, 669, 239 N.W.2d 313 (1976); *Madison Gen. Hospital Asso. v. City of Madison,* 71 Wis.2d 259, 263, 237 N.W.2d 750 (1976); *Rudolph, supra* 770; *Thompson v. Kenosha County,* 64 Wis.2d 673, 678, 221 N.W.2d 845 (1974); *Hancock v. Regents of University of Wisconsin,* 61 Wis.2d 484, 492, 213 N.W.2d 45 (1973); *American Med. S., Inc., supra,* 203; *Pension Management, Inc., supra,* 127, 128.

(1951); *Heller v. Shapiro*, 208 Wis. 310, 313, 314, 242 N.W. 174 (1932).

■

There can be no question that a controversy exists. The plaintiffs contend that the levy and collection of property tax caused by the defendants is unconstitutional. Whether the plaintiffs can establish a constitutional violation is beyond the scope of this review. The defendants, in particular, the board members, have a statutory duty to transmit annually to the common council their budgetary needs for the ensuing year. The common council is then required by law to levy and collect a property tax sufficient to meet the financial needs of the board. The common council is not authorized to levy a tax for school purposes absent the transmittal of budgetary needs from the board. Thus the common council only acts in these taxing matters subsequent to the required board action.

■

The plaintiffs allege that the above financing scheme is unconstitutional and they seek to prevent the levy and collection of property tax for school purposes on their land. The board has an obvious interest in contesting the asserted claim of right of the plaintiffs. To fail to do so would result in the loss of the ability to raise a large share of the funds necessary to operate Milwaukee's school system. To fail to contest the plaintiffs' claim and to cease transmitting budgetary needs to the common council for the subsequent levy and collection of tax, would place the defendant-board in the position of failing to carry out its statutorily imposed duties.

■

There is nothing hypothetical about the controversy. The plaintiffs allege that the board has accomplished its statutory duty in the past with the result that property tax has been levied and collected on their property.

Since the board is required by law to transmit its budgetary needs yearly, and the common council is likewise required to levy and collect a property tax on all taxable property in Milwaukee, it is obvious that under the present statutes the plaintiffs' property will be taxed on a yearly basis for Milwaukee public school purposes.

The defendants, after discussing *McInnis v. Shapiro* (D.C. Ill., 1968), 293 Fed. Supp. 327; *Burruss v. Wilkerson* (D.C. Va. 1969), 310 Fed. Supp. 572; and *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 Sup. Ct. 1278, 36 L. Ed.2d 16 (1973), rehearing denied 411 U.S. 959, 93 Sup. Ct. 1919, 36 L. Ed.2d 418, argue that the plaintiffs have not established an invasion or infringement of a legal right and thus that they are not entitled to any legal or equitable remedy.

The question is not, however, what the plaintiffs have established, but rather what they have pleaded. While the cited cases, standing together, may stand for the proposition that under these circumstances, no fourteenth amendment equal protection guarantee was violated, the defendants overlook the fact that the plaintiffs bring this action alleging several Wisconsin constitutional violations.

Liberally construed, the complaint adequately alleges a violation of the Wisconsin constitutional guarantee of the right to equal educational opportunity, alleging that the present system of financing public education (as applied to the Milwaukee school system) is invalid under the several provisions of the Wisconsin Constitution in that the use of the property tax produces an impermissible disparity in the quality of education and thereby denies the children of some of the plaintiffs a right to equal educational opportunities.

Moreover, the plaintiffs adequately allege a violation of the uniformity clause of art. VIII, sec. 1, of the Wisconsin Constitution, alleging that they are being taxed at rates different from property owners statewide, for the same public purpose. They further allege a Wisconsin constitutional equal protection violation in that they were being discriminatorily taxed as property owners and are being burdened with the financial support of the Milwaukee school system while nonproperty owners are free from such burdens.

The plaintiffs have set forth constitutionally protected rights that they allege have been infringed upon by the defendants acting pursuant to ch. 119, Stats. The plaintiffs have additionally alleged, with particularity, the respects in which the statutory scheme is constitutionally violative. Regardless of the merits of their constitutional claims, it cannot be said that the plaintiffs have failed to raise a justiciable controversy.

*ADVERSE INTEREST:* This court in *State ex rel. LaFollette, supra,* 22, stated that the controversy must exist between persons whose interests are adverse. The plaintiffs seek to have the present statutory scheme for the local financing of public schools via the local property tax declared unconstitutional and thus invalid. The defendants have a statutory duty to initiate the taxing process by transmitting their budgetary needs to the common council. Therein lies the adversity. The plaintiffs seek to invalidate the financing system; the defendants by statute are required to operate under and maintain the system. Sufficient adverseness to " '. . . sharpen the presentation of issues for illumination of constitutional questions. . . .' " exists. *Madison Gen. Hospital Asso., supra,* 265, *quoting* from *Moedern v. McGinnis,* 70 Wis.2d 1056, 1064, 236 N.W.2d 240 (1975).

*LEGAL INTEREST:* The requirement of a legally protected interest has often been voiced in terms of standing. In *Thompson, supra,* 679, 680, this court, addressing a challenge to the plaintiffs' standing therein, stated:

"Liberally construed the plaintiffs' complaint stands as a taxpayers' suit to enjoin illegal governmental expenditure. True, the complaint does not specifically allege that the plaintiffs, individually or as a class, have suffered any loss; that defect however is not fatal. The allegation that one taxpayer is suing to vindicate rights of all taxpayers may be implied. As to the allegation of pecuniary loss, the complaint does state that plaintiffs are taxpayers and that sec. 70.99, Stats., providing for creation of a county-wide assessor system, is unconstitutional. Under sec. 70.99(12) the state and the county jointly finance the operation of the system. Thus the statute does require expenditure of public money, and if the statute were held unconstitutional, this expenditure would also be illegal. That sufficiently establishes plaintiffs' pecuniary loss, according to *S. D. Realty Co. v. Sewerage Comm.:* [15 Wis.2d 15, 22, 112 N.W.2d 177 (1961)]

" 'Any illegal expenditure of public funds directly affects taxpayers and causes them to sustain a pecuniary loss. This is because it results either in the governmental unit's having less money to spend for legitimate governmental objectives, or in the levy of additional taxes to make up for the loss resulting from the expenditure. Though the amount of the loss, or additional taxes levied, has only a small effect on each taxpayer, nevertheless it is sufficient to sustain a taxpayers' suit. . . .' "

The same considerations are applicable in this case. The complaint states that the plaintiffs are taxpayers and that provisions of ch. 119, Stats., are unconstitutional. The provisions of ch. 119 require expenditures of public monies for school purposes as well as the levy and collection of taxes to provide these monies. If the

provisions of ch. 119 were held unconstitutional, the levy, collection and expenditures would be illegal.

The plaintiffs thus have standing to contest the constitutionality of the taxing provisions of ch. 119, Stats., because they assert that they are taxpayers and it is inferred that they will suffer or have suffered pecuniary loss because any expenditure would be illegal if the provisions are held unconstitutional. The plaintiffs further assert with some particularity their constitutional rights which they believe have been violated.

In *Madison Gen. Hospital Asso., supra,* 265, this court stated:

"Very recently this court has made clear that the 'gist of the requirements relating to standing' is to assure that the party seeking relief has alleged 'such a personal stake in the outcome of the controversy as to give rise to that adverseness necessary to sharpen the presentation of issues for illumination of constitutional questions.' (*Moedern v. McGinnis* (1975), 70 Wis.2d 1056, 236 N.W.2d 240.) . . . ."

While not all plaintiffs herein are parents with children enrolled in the Milwaukee school system, all are taxpayers and since their alleged constitutional violations are not limited to those involving the equal opportunity for education, their status as taxpayers is sufficient to establish standing to bring this action.

*RIPE FOR DETERMINATION:* The basic rationale of the ripeness doctrine is to prevent the courts through the avoidance of premature adjudication from entangling themselves in abstract disagreements over administrative or legislative policies. *Lister, supra,* 309.

No possible judicial entanglement in administrative or legislative policy decision is evident. The tax has already

been levied and collected and the constitutional violation, if any, has already occurred. No future events are necessary to enlarge upon the circumstances which currently present the controversy. *State ex rel. Sundby v. Adamany*, 71 Wis.2d 118, 125, 237 N.W.2d 910 (1976). The controversy will continue because the board is required by law to transmit its budgetary needs and the common council is required to levy and collect the tax on an annual basis.

All four of the conditions precedent for the proper maintenance of a declaratory judgment action were met by the plaintiffs. That fact is evident from the face of the complaint and a liberal interpretation thereof. Sec. 269.56, (6), Stats., is not applicable as the judgment or decree sought would have settled the controversy and would not have amounted to an advisory opinion.

The defendants argue that the present controversy is between the plaintiffs and the legislature, not the named defendants. The defendants further point out that it is the common council and not the board or any of the other defendants who levy the tax. The defendants overlook two critical facts: First, the legislature has already completed any policy decisions involved and has enacted ch. 119, Stats., into law; second, the common council can only levy and collect the tax, through its named defendant officers, after the defendant-board has transmitted its monetary needs. The actions of the board, statutorily mandated, are the precipitating factor in the final imposition of the tax.

The defendants argue that the plaintiffs have alternate remedies available to them if they are seeking tax refunds. *See:* secs. 70.85, 70.47 (9a), and 74.73, Stats. The plaintiffs are not seeking merely a refund for past taxes paid. They are seeking to invalidate the whole taxing scheme imposed under ch. 119, Stats. Since the

plaintiffs are not seeking merely a refund of taxes paid, and since they are not contesting the valuation of their property, the remedies suggested by the defendants would be inappropriate in a determination of the constitutionality of the entire taxing procedure mandated by ch. 119.

The order sustaining the demurrer and dismissing the complaint on its merits without leave to amend or replead is reversed and the cause remanded.

*By the Court.*—Order reversed and cause remanded.