TANCK, and others, Appellants, v. DANE COUNTY REGIONAL PLANNING COMMISSION, and others, Respondents.

*No. 75–745. Argued October 5, 1977.—Decided November 30, 1977.*
(Also reported in 260 N.W.2d 18.)

78

For the appellants there were briefs by *Thomas G. Voss* and *Voss, Nesson, Koberstein, Erbach & Voss,* and oral argument by *Thomas G. Voss,* all of Madison.

For respondents Dane County Regional Planning Commission and Charles Montemayor there was a brief by *Boardman, Suhr, Curry & Field* and oral argument by *John Knight,* all of Madison.

For respondents Dane County, George Reinke, Francis R. Hebl and Martin Gunnulson, there was a brief by *Glenn L. Henry,* Dane County corporation counsel, and *Robert M. Hesslink, Jr.,* assistant Dane County corporation counsel, and oral argument by *F. Thomas Creeron III,* assistant corporation counsel.

HANLEY, J.    The following issues are here on appeal:

1.    Did the trial court properly sustain the demurrers with respect to the plaintiff, town of Middleton?

2.    Did the trial court properly sustain the demurrers with respect to the plaintiffs, Ray H. and Irene M. Tanck?

3. Was the contract of November 25, 1974 between the Commission and the county valid?

*Demurrer as to the Town of Middleton*

The Commission first demurred to the complaint with respect to the town of Middleton on the grounds that it did not have legal capacity to sue because it was not a county taxpayer. This contention goes principally to the requirement that the plaintiff must have a legally protected interest in the controversy to maintain an action of this nature. In *Tooley v. O'Connell,* 77 Wis.2d 422, 438, 253 N.W.2d 335 (1977), the taxpaying status of the plaintiffs who were seeking a declaratory judgment with respect to the statutory plan for financing the Milwaukee public school system was discussed in terms of the legally protected interest requirement, stating that the "requirement of a legally protected interest has often been voiced in terms of standing."

This court has long adhered to the position that a municipality has no standing to enjoin the assessment and collection of county taxes when the municipality has no interest in the assessments other than that of an agent through which they are collected. *State ex rel. Sheboygan v. Sheboygan County,* 194 Wis. 456, 216 N.W. 144 (1928). In *Appleton v. Outagamie County,* 197 Wis. 4, 220 N.W. 393 (1928), this court held that a municipality had no standing to seek the restraining of its treasurer from paying over to a county taxes which had been collected but which were alleged to be illegal. More recently, this court affirmed an order sustaining a demurrer to a complaint with respect to a municipality in which the city sought, in a declaratory judgment action, to challenge the constitutionality of the statute which provided for the organization and maintenance (including funding) of area vocational education districts. *West Milwaukee v. Area Bd. Vocation T. & A. Ed.,* 51 Wis.2d 356, 187 N.W. 2d 387 (1971).

■

The complaint in this instance alleges that the municipality will itself be assessed by the county to fund the subject contract. However, the plaintiff has not cited, nor can this court find, any statute authorizing such an assessment against the municipality. Consequently, the town has no legally protected interest in this controversy and the demurrer as to it must be sustained.

*Demurrer as to Individual Plaintiffs*

■

In sustaining the demurrer as to the individual plaintiffs, Ray H. and Irene M. Tanck, the trial court assumed that the various facts alleged in the amended complaint were true, but rejected the resulting alleged legal conclusions following therefrom. In determining the propriety of a demurrer, the court is required to assume alleged facts to be true, but not so alleged legal conclusions. *International Foundation of Employee Benefit Plans, Inc. v. City of Brookfield*, 74 Wis.2d 544, 548, 247 N.W. 2d 129 (1976).

We think the amended complaint does not state facts with respect to the Tancks sufficient to constitute a cause of action for the following reasons: (1) the county and the Commission both have expressed statutory power to enter into contracts for planning services as was done here; (2) the county is authorized to make grants to the Commission which it in turn is authorized to receive; (3) the source of the operating funds of the Commission is not limited to direct assessments against local units in its jurisdiction; and (4) the individual plaintiffs have not been harmed by the Commission's decision not to assess service charges for the year 1976.

■

The Tancks' action is premised on the theory that county taxpayers are injured by any expenditure of funds under an invalid contract and therefore may bring an

action to restrain execution of such a contract. However, where the county and the Commission are authorized under the Wisconsin Statutes to enter into the contract as in the instant case the complaint is properly dismissed on demurrer.

*Validity of the Contract*

Sec. 66.945, Stats., provides for the creation and operation of regional planning commissions. The functions of the commissions established under this section are set forth in sec. 66.945(8), Stats., and include conducting studies, collecting and analyzing data, preparing maps, charts and tables, making plans for the physical, social and economic development of the region, making official recommendations for the development of the region, providing advisory services to local government units within the region, and other such services. The planning commissions have all the powers necessary to perform these services, although the services are only advisory to the local governments participating therein. Sec. 66.945(8) (a), Stats.

The plaintiffs claim that sec. 66.945, Stats., provides a specific vehicle for financing the Commission's region-wide activities, that this vehicle was intended by the legislature as the exclusive means of financing the Commission's region-wide activities, and that the contract here in question is an attempt to circumvent these statutes and their limitations.

The financing vehicle set forth in sec. 66.945(14), Stats., allows the Commission to charge the cost of its operations to the various local government units within its region:

"(14) BUDGET AND SERVICE CHARGES. (a) For the purpose of providing funds to meet the expenses of a regional planning commission, the commission shall annually on or before October 1 of each year prepare and approve a budget reflecting the cost of its operation and services to the local governmental units within the region.

The amount of the budget charged to any local governmental unit shall be in the proportion of the equalized value for tax purposes of the land, buildings and other improvements thereon of such local governmental unit, within the region, to the total such equalized value within the region. The amount charged to a local governmental unit shall not exceed .003 per cent of such equalized value under its jurisdiction and within the region, unless the governing body of such unit expressly approves the amount in excess of such percentage. All tax or other revenues raised for a regional planning commission shall be forwarded by the treasurer of the local unit to the treasurer of the commission on written order of the treasurer of the commission.

"(b) Where one-half or more of the land within a county is within a region, the chairman of the regional planning commission shall certify to the county clerk, prior to August 1 of each year, the proportionate amount of the budget charged to the county for the services of the regional planning commission. Unless the county board finds such charges unreasonable, and institutes the procedures set forth below for such a contingency, it shall take such necessary legislative action as to provide the funds called for in the certified statement.

"(c) Where less than one-half of the land within a county is within a region, the chairman of the regional planning commission shall before August 1 of each year certify to the clerk of the local governmental unit involved a statement of the proportionate charges assessed to that local governmental unit. Such clerk shall extend the amount shown in such statement as a charge on the tax roll under s. 144.07(2)."

The above section is essentially a procedural one, indicating when and how the charges shall be collected, but it is also a substantive one to the extent that it limits the charges which may be collected against the various units.

The plaintiffs contend that this is a mandatory funding statute as well. Their position is that where a statute grants authority to do a thing and prescribes the manner of doing it, the provision as to the manner of doing the

thing is mandatory. The plaintiffs present two arguments to support this position. First, the plaintiffs emphasize the legislature's use of the term "shall" as indicating its intent that the assessment permitted under this section was to be the exclusive method of financing the Commission's activities. We do not agree. The mandatory language contained in sec. 66.945 (14), Stats., relates to the procedures which must be followed in assessing the service charge once this method of financing the Commission is adopted, but it does not relate to the initial decision to adopt this method. Alternative methods of financing the Commission's activities provided by the statutes refute any presumption that the use of service charges is mandatory. *See,* Sutherland, *Statutory Construction,* §57.14 at 435–36 (4th Ed. 1973).

Second, the plaintiffs stress the fact that this subsection provides different budget certification procedures based upon the amount of land within a county which is within the region. When one-half or more of the land within a county is within a region, that region's commission certifies to the county clerk the share of its budget charged to the county; when less than one-half is in the region, the region's commission certifies its charges directly to the individual local government units. Sec. 66.945 (14) (b) and (c), Stats. Plaintiffs argue that this distinction, together with the withdrawal provisions of subsection 66.945 (16), indicates a legislative intent to enable a participating local government unit to withdraw from the purview of the Commission both politically as well as financially.

The withdrawal of a participating local unit is provided by subsection 66.945 (16) :

"(16) WITHDRAWAL. Within 90 days of the issuance by the governor of an order creating a regional planning commission, any local unit of government within the boundaries of such region may withdraw from the jurisdiction of such commission by a two-thirds vote of the members-elect of the governing body after a public

hearing. Notice thereof shall be given to the commission by registered mail not more than 3 nor less than 2 weeks prior thereto and by publication of a class 2 notice, under ch. 985. A local unit may withdraw from a regional planning commission at the end of any fiscal year by a two-thirds vote of the members-elect of the governing body taken at least 6 months prior to the effective date of such withdrawal. However, such unit shall be responsible for its allocated share of the contractual obligations of the regional planning commission continuing beyond the effective date of its withdrawal."

By providing that the withdrawal of a local unit is effective only at the end of a fiscal year, the plaintiffs contend that the statute contemplates that the scope of the Commission's taxing power could thereby be altered; the withdrawal of a unit which left less than one-half of the county represented by local participating units would require the Commission to certify its budget not to the county clerk under subsection 66.945(14)(b) but rather to the remaining units themselves under subsection (c). The plaintiffs therefore contend that the contract here in question is an attempt to spread the cost of the Commission's operations over the entire county area contrary to statutory funding provisions.

Plaintiffs' argument does not take into account the many relationships which might exist between various governmental bodies and a commission established under this section. While regional planning commissions are limited to the extent their functions are merely advisory, they nevertheless have been invested with certain powers by statute. Not only does the Commission have the authority to tax the region its serves under sec. 66.945(14), but it also has limited, but no less mandatory, supervisory powers over certain actions taken by local governments. Sec. 66.945(11), Stats., requires local units to submit to the Commission their plans concerning the location of or acquisition of land for any of the facilities which are included in the Commission's master regional plan for its

consideration and recommendation. More important to the disposition of this appeal, the Commission is empowered by sec. 66.945(12)(b) to enter into contracts with any local unit to make studies and offer advice on land use, thoroughfares, community and public improvement, and the encouragement of economic and other developments. A county is a local unit with which the Commission may contract. Sec. 66.945(1), Stats. The Commission is empowered to arrange compensation for such services by sec. 66.945(14)(e).

These contracts are generally authorized under sec. 66.30, Stats., which provides in part:

"66.30 *Intergovernmental cooperation.* (1) *In this section 'municipality' means* the state or any department or agency thereof, or any city, village, town, *county,* school district, public library system, public inland lake protection and rehabilitation district, sanitary district, farm drainage district, sewer utility district, water utility district or *regional planning commission.*

"(2) In addition to the provisions of any other statutes specifically authorizing cooperating between municipalities, unless such statutes specifically exclude action under this section, *any municipality may contract with other municipalities, for the receipt or furnishing of services or the joint exercise of any power or duty required or authorized by law.* If municipal parties to a contract have varying powers or duties under the law, each may act under the contract to the extent of its lawful powers and duties. This section shall be interpreted liberally in favor of cooperative action between municipalities." (Emphasis supplied).

This section empowers municipalities as therein defined to enter into contracts for the receipt or furnishing of services required or authorized by law, and is entitled to liberal construction in favor of cooperative action between such municipalities. That the county is authorized and required by law to plan for its physical development and zoning is clear, such authorization being vested in the county by sec. 59.97(1), Stats. *See, Town of Salem v.*

*Kenosha County,* 57 Wis.2d 432, 434–35, 204 N.W.2d 467 (1973) ; *Jefferson County v. Timmel,* 261 Wis. 39, 59, 51 N.W.2d 518 (1952). In addition, sec. 59.97(2)(d), Stats., permits counties to expend funds and to contract for the services of such professional planning technicians and staff as are necessary for the discharge of the duties and responsibilities of its planning and zoning committee.

Is this contract in excess of the authority of the county and the Commission? We think it is not. On the one hand, this contract is within the scope of authority granted to the county because the county may plan for the physical development of the whole area within its boundaries and, within certain restrictions, pass zoning ordinances to implement that plan, and because the county may enter into contracts for professional services relating to such planning. On the other hand, the contract is within the scope of authority granted to the Commission to enter into contracts to make studies and offer advice on land use and development because, as the plaintiffs concede, the county is a local unit still participating in the Commission. Sec. 66.945(12)(b), Stats.

The plaintiffs' argument that the withdrawal of a local unit from a regional planning commission withdraws the area of that unit from the taxing authority of the Commission and therefore denies any subsequent assessment of its citizens, in any manner, for services performed is without merit. Admittedly, the fact that the original boundaries of the region coincided with those of the county causes certain peculiar difficulties here. But as was stated by this court in *Appleton v. Outagamie County, supra,* at 10, "The interpretation of this statute cannot be made to depend wholly upon the exigencies of the situation presented by the facts of this case. As construed it will apply to every county in the state under all circumstances."

The withdrawal provision of sec. 66.945 (16) provides withdrawal "from the jurisdiction of such commission" if two-thirds of the voters of the local unit so vote within 90 days of the Commission's creation. Thereafter, the statute provides merely withdrawal "from a regional planning commission." Even assuming that the withdrawal of a local unit from the Commission absolves the unit of its obligations to submit proposed facilities as required by sec. 66.945 (11) and direct fiscal support under sec. 66.945 (14), to hold that this withdrawal affects the participation of a county would render ineffective all those provisions permitting its participation in the Commission.

Here, the county is still participating as a representative of the entire area within its boundaries. Until it too withdraws from the Commission, or until the Commission is dissolved pursuant to sec. 66.945 (15), Stats., it is empowered to seek from the Commission services which will be in its best interests to obtain. In doing so, it acts as the county and for the county. The relationship between the county and the town of Middleton remains the same regardless of their participating or non-participation with the Commission.

We conclude that the withdrawal of local units does not impair the participation of a county and that the contract between Dane County and the Regional Planning Commission is legal and valid. The demurrer to the individual plaintiffs must also be sustained.

*By the Court.*—Order affirmed.