Warren J. KLAUS, as receiver of Peter Mark, et al., Plaintiff-Appellant,

v.

Arthur P. VANDER HEYDEN and Alois Fons, Jr., and each of them, Defendants-Respondents-Petitioners.†

Supreme Court

*No. 80–539. Argued February 3, 1982.—Decided March 2, 1982.*

(Also reported in 316 N.W.2d 664.)

† Motion for reconsideration denied, without costs, on April 12, 1982.

354

For the defendants-petitioners there was a brief by *Larry J. Ratzel* and *L. John Ratzel, Jr.*, of Elm Grove, and oral argument by *Alan Goldberg* of Milwaukee.

For the plaintiff-appellant there was a brief and oral argument by *Warren J. Klaus* and *Henry C. Friend,* both of Milwaukee.

WILLIAM G. CALLOW, J. This is a review of an unpublished decision of the court of appeals which reversed a January 24, 1980, order entered by Milwaukee county circuit court Judge William A. Jennaro granting defendants' motion to dismiss pursuant to sec. 802.06 (2) (h), Stats., on the ground that the action was res judicata. We hold that the plaintiff's action was barred by the doctrine of res judicata, and therefore we reverse the court of appeals.

The plaintiff in this action, Warren J. Klaus, is the receiver appointed by the circuit court for Milwaukee County to manage the assets of Peter Mark, as successor receiver to the late Paul Moskowitz. According to the allegations set forth in the complaint by Klaus, the following chain of events led to the present controversy.

Mark, who is now deceased, was an attorney who possessed expertise in the area of real estate investment. Sometime in 1964 he located a parcel of land at South 35th Street and College Avenue in the city of Franklin, Wisconsin, which he determined was well suited for the construction of apartments. He negotiated for the purchase of the land for $42,000. Mark's credit, however, was impaired by the entry of judgments against him, and he was unable to personally finance the purchase of the land. Mark contacted two investors, one of whom he had dealt with previously, to arrange for the purchase of the property. Mark, Arthur Vander Heyden, and Arthur Pett entered into an agreement whereby Vander Heyden and Pett were to purchase and take title to the property in their names. Vander Heyden and Pett were to pay the annual taxes and assessments against the property and to sell the property when the market became favorable. Upon the sale Vander Heyden and Pett were to receive all the funds they had advanced. If additional funds remained, Mark, Vander Heyden, and Pett were each to receive one-third of the profits. On or about July 20, 1965, Pett assigned his interest in the arrangement to Alois Fons, Jr., who is a party to the present action.

In December of 1966, Vander Heyden and Fons commenced an action for declaratory relief in the Milwaukee County circuit court against Paul Moskowitz, Mark's receiver at that time. The amended complaint for declaratory relief filed May 15, 1967, stated two causes of action: First, that the defendant Moskowitz

claimed some interest in the property, "the exact nature, extent, and quality of which claims are unknown to plaintiffs," and that upon demand, the defendant failed to assert or define the nature and extent of his claim "but has merely threatened to place some document of record in the Office of the Register of Deeds . . . sufficient to prevent the plaintiffs from dealing with the said real estate so as to protect their investment and best interest." The second cause of action asserted "[t]hat the defendant claims an interest in any profits on the sale of the real estate . . . pursuant to a verbal agreement . . . that plaintiffs further allege that all such claims are void as a matter of law and are further invalid and of no force and effect by virtue of indefiniteness and uncertainty." Moskowitz failed to answer the complaint, and Milwaukee County circuit court Judge Ronold A. Drechsler entered a default judgment on May 18, 1967, concluding as a matter of law "[t]hat the plaintiffs are entitled to the relief demanded in their complaint" and "[t]hat the defendant, and all persons claiming under him, are forever barred from any estate or interest in the property, or the proceeds thereof."

On June 9, 1967, Moskowitz petitioned the court for an order requiring Vander Heyden and Fons to show cause why the judgment should not be reopened to allow the filing of his answer and counterclaims, most of which were unrelated to the declaratory judgment action. We note that neither Mark nor his receivers has ever asserted any ownership interest in the property. On June 12, 1967, Milwaukee County circuit Judge Harvey Neelen issued an order to show cause. On July 12, 1967, following a hearing, Judge Drechsler denied Moskowitz's motion to reopen the judgment without prejudice. Moskowitz failed to appeal this order within the statutorily prescribed time limits of sec. 269.46, Stats., 1965 (precursor to sec. 806.07, Stats.).

Eleven years later, on May 19, 1978, the property was sold for approximately $168,000. When Klaus, successor receiver to Moskowitz, discovered that the property had been sold, he commenced the instant action on August 22, 1979, in Milwaukee County circuit court for an accounting of the profits from the sale of the property, naming Vander Heyden and Fons as defendants. On September 20, 1979, Vander Heyden and Fons filed a motion to dismiss pursuant to sec. 802.06(2) (h), Stats.,[1] alleging that the May 18, 1967, default judgment barred the present action because it was res judicata on the issue of profit from the sale of the property. On January 24, 1980, circuit court Judge William A. Jennaro issued an order dismissing the complaint of receiver Klaus as res judicata, pursuant to sec. 802.06(2) (h), Stats. Judge Jennaro in his memorandum decision reasoned:

"[T]he issue of profit from the proceeds of the sale is and has been the position of the receiver since before the instigation of [the case] and would have been within the jurisdiction of the court to determine had the receiver answered in the original action. Therefore, the proposition that profit from sale or trade was not considered and that as a result the issue has not been adjudicated thereby barring the doctrine of res judicata is untenable. In fact, the suit to declare the interests of the

[1] Sec. 802.06(2) (h), Stats., provides:

"(2) How PRESENTED. Every defense, in law or fact, except the defense of improper venue, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or 3rd party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . h) res judicata. . . . A motion making any of these defenses shall be made before pleading if a further pleading is permitted. . . . . If on a motion asserting . . . the defense[s] described in h) . . . matters outside of the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in s. 802.08, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by s. 802.08."

parties to realty and the suit to recover an incidence of that interest cover the identical issues and is barred by res judicata. A judgment being conclusive between the parties and their privies in a second cause of action on the same issues regarding the same realty as to all questions that were or ought to have been litigated in the first cause of action." (Citations omitted.)

On appeal the court of appeals reversed, holding that there was no identity of issues between the 1967 action and the present action because the 1967 default judgment sought only to quiet title and "did not address the matter of the oral contract for profits."

The issue before us is whether the May 18, 1967, default judgment bars the receiver's suit for an accounting of the profits from the sale of the property. We hold that it does.

The May 18, 1967, action was one for declaratory relief. The granting of relief in a declaratory judgment action rests within the sound judicial discretion of the trial court. Sec. 806.04(6), Stats.; *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.,* 342 US 180, 183–84 (1952) ; *Tooley v. O'Connell,* 77 Wis. 2d 422, 433, 253 N.W.2d 335 (1977) ; *Pension Management, Inc. v. DuRose,* 58 Wis. 2d 122, 127, 205 N.W.2d 553 (1973) [*quoting Selective Insurance Co. v. Michigan Mutual Liability Insurance Co.,* 36 Wis. 2d 402, 408, 153 N.W.2d 523 (1967)]. Sec. 806.04, Stats., the Uniform Declaratory Judgments Act, states that the Act's "purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered." Sec. 806.04(12), Stats. The Act further provides that declaratory judgments "shall have the force and effect of a final judgment or decree."[2]

---

[2] Sec. 806.04(1), Stats. Sec. 806.04(8), Stats., of the Uniform Declaratory Judgments Act, authorizes that [f]urther relief based

The declaratory judgment in the controversy before us was rendered in default. Although the general rule is that a court may grant such relief as it feels a party is entitled to, even if such relief has not been demanded, this rule sees exception with default judgments. In the case of a default judgment, relief is limited to that which is demanded in the plaintiff's complaint. Sec. 806.01 (1)(c), Stats.; *Wisconsin National Loan and Building Association v. Pride,* 136 Wis. 102, 105, 116 N.W. 637 (1908).

To determine what is demanded in the Vander Heyden and Fons amended complaint, we must consider several rules of construction. The familiar rule that "[a]ll pleadings shall be so construed as to do substantial justice," sec. 802.02(6), Stats., is foundational to any analysis. The prayer of the complaint has been said to form no part of the complaint, and although it is required by statute, it in no way limits judicial ascertainment of the claim for relief. *Estate of Mayer,* 26 Wis. 2d 671, 678, 133 N.W.2d 322 (1965). The prayer of the complaint is, of course, important in ascertaining the intention of the pleader, *id.,* and this is of particular significance in cases of default judgments where it is of great importance to limit the relief obtainable. In a judgment rendered by default, we must ensure that the defendant's right to notice has been protected.

We note that the conclusiveness of a default judgment is limited to the material issuable facts which are well

on a declaratory judgment or decree may be granted whenever necessary or proper. . . . . [T]he court shall . . . require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith." The receiver urges us to interpret this subsection as somehow destroying the finality effect of declaratory judgments. This we decline to do, however, for the statute is clear that "further" relief may be granted to the party in whose favor the judgment was awarded in order to give effect to the judgment.

pleaded in the declaration or complaint. The judgment does not extend to issues which were not raised in the pleadings. 50 C.J.S. *Judgments* sec. 706 (1947); *Mitchell v. Jones,* 172 Cal. App. 2d 580, 586, 342 P.2d 503, 506–07 (1959) (default judgment is res judicata as to all issues aptly pleaded in the complaint, and defendant is estopped to deny in a future action any allegation contained in the former complaint).

In examining the Vander Heyden and Fons amended complaint for declaratory relief in the 1967 action, we note that the following allegations were raised:

#### "FIRST CAUSE OF ACTION

" . . .

"4. That the defendant claims some interest or estate in the above-described real property or some part thereof, the exact nature, extent, and quality of which claims are unknown to plaintiffs; that plaintiffs further allege that all such claims which the defendant may assert as to the above-described premises are invalid and of no force and effect, and that the plaintiffs are seized and possessed of said premises free of, and wholly discharged from any and every such claim, demand, or incumbrance.

"5. That, although the defendant has been appointed and acting as assignee as aforesaid for approximately eighteen months prior to this action, he has not upon demand defined or asserted the nature and extent of his claim but has merely threatened to place some document of record in the Office of the Register of Deeds of the county in which this land is located sufficient to prevent the plaintiffs from dealing with the said real estate so as to protect their investment and best interest; that the said property is subject to first mortgage liens requiring periodic payments of interest and principal; that defendant has stated that he expects plaintiffs to preserve and protect the good standing of such liens but does not expect to participate or contribute in any financial contributions consistent with his claim of interest."

## "SECOND CAUSE OF ACTION

" . . .

"2. That the defendant *claims an interest in any profits on the sale of the real estate* referred to in . . . plaintiffs' First Cause of Action, *which interest is allegedly claimed pursuant to a verbal agreement with plaintiffs herein;* that plaintiffs further allege that all such claims are void as a matter of law and are further invalid and of no force and effect by virtue of indefiniteness and uncertainty, and that the plaintiffs are seized and possessed of the said premises free of, and wholly discharged from, any and every such claim, demand or encumbrance." (Emphasis added.)

Judge Drechsler, in rendering judgment on this complaint, made (in part) the following findings of fact and conclusions of law:

## "FINDINGS OF FACT

" . . . .

"4. That the defendant claims some interest or estate in the above-described real property or some part thereof, the exact nature, extent, and quality of which claims are unknown to plaintiffs.

"5. That, although the defendant has been appointed and acting as assignee as aforesaid for approximately eighteen months prior to this action, he has not upon demand defined or asserted the nature and extent of his claim but has merely threatened to place some document of record in the Office of the Register of Deeds of the county in which this land is located sufficient to prevent the plaintiffs from dealing with the said real estate so as to protect their investment and best interest; that the said property is subject to first mortgage liens requiring periodic payments of interest and principal; that defendant has stated that he expects plaintiffs to preserve and protect the good standing of such liens but does not expect to participate or contribute in any financial contributions consistent with his claim of interest.

"6. That the defendant further claims an interest in any profits on the sale of the real estate above referred

to, which interest is claimed pursuant to a verbal agreement with plaintiffs herein and one Peter J. Mark.

"And from the above and foregoing Findings of Fact the Court makes and enters the following as and for its

## "CONCLUSIONS OF LAW

"1. That the plaintiffs are entitled to the relief demanded in their complaint.

"2. That the defendant, and all persons claiming under him be forever barred from any claim to any estate or interest in the property or the proceeds thereof . . . .

"3. That the plaintiffs are the lawful owners of the property . . . and are vested with absolute and unencumbered title in fee to said property as it relates to the claim of the defendant."

We note that, although defendant receiver Moskowitz did not answer the complaint upon which the 1967 default judgment was issued, approximately one month following entry of judgment he filed a motion to reopen the judgment to allow him to answer and assert counterclaims. Moskowitz's proposed answer included the following:

## "FIRST CAUSE OF ACTION

". . . .

"4. [I]n consideration of his services the said Arthur P. Vander Heyden and Arthur Pett agreed that the said Peter J. Mark was to have one-third interest in the profits to be derived from the sale of the said land after the deduction of the purchase price and all expenses. . . .

"5. Defendant further alleges that he has defined and asserted the nature and extent of his claim as constituting a one-third interest in the profits to be derived from the sale of the said land and alleges that he expects the plaintiffs to pay the taxes upon the said property and the mortgage payments, both interest and principal, because this was a part of their said undertaking with the said Peter J. Mark and that all of such payments are to

be taken into account and deducted before the profit upon the sale of the land is determined."

### "SECOND CAUSE OF ACTION

" . . .

"2. Defendant denies the allegations of the second paragraph of the plaintiff's second cause of action and alleges that the said Peter J. Mark entered into an agreement in writing which was subscribed by the said Arthur Pett setting forth his agreement to share in the profits . . . ."

Moskowitz's motion to reopen the judgment to permit him to answer and counterclaim was denied without prejudice. Moskowitz failed to appeal this denial within the statutory one-year time limitation established pursuant to sec. 269.46, Stats., 1965 (precursor to sec. 806.07, Stats.).

Plaintiff receiver Klaus, successor receiver to Moskowitz, instituted the present contract action for an accounting of the profits from the sale of the real estate some eleven years following the entry of the default judgment. Klaus alleges that the issue of profit was not decided in the declaratory judgment action which pertained merely to title and *proceeds.* He cites to Judge Drechsler's denial *without prejudice* of his motion to reopen the judgment, which alleged an interest in profits from the sale of the property, as evidence that the default judgment did not affect any interests in profits from the sale of the property. In the alternative, Klaus argues that prior to May 19, 1978, when the sale of the property occurred, there was no interest in any profit, and he had no cause of action which he could pursue because one requirement of a justiciable controversy is that rights must be present and fixed as opposed to hypothetical or future. *See: Tooley v. O'Connell,* 77 Wis. 2d at 434; *Skowron v. Skowron,* 259 Wis. 17, 19, 47 N.W.2d 326 (1951). In resolving

this controversy we first address the issue whether the right to profits was too hypothetical to have been adjudicated by the default judgment. We will then address the issue whether the right to profits actually was adjudicated in the 1967 declaratory judgment action, thereby barring under principles of res judicata the present contract action seeking an accounting of the profits.

In rendering a declaratory judgment the trial court must assess whether the plaintiff has met the four conditions precedent to the proper maintenance of an action:

" '(1) There must exist a justiciable controversy—that is to say, a controversy in which a claim of right is asserted against one who has an interest in contesting it.
" '(2) The controversy must be between persons whose interests are adverse.
" '(3) The party seeking declaratory relief must have a legal interest in the controversy—that is to say, a legally protectible interest.
" '(4) The issue involved in the controversy must be ripe for judicial determination'."

*Tooley v. O'Connell,* 77 Wis. 2d at 433–34 [*quoting State ex rel. La Follette v. Dammann,* 220 Wis. 17, 22, 264 N.W. 627 (1936)]. Klaus argues that the first criterion, justiciable controversy, has not been met regarding the issue of profits from the sale of the property. We are of the opinion that the first condition precedent to a declaratory judgment, presence of a justiciable controversy, would appear to overlap in analysis with the fourth condition precedent, ripeness. Although Klaus argues that the issue of profits was not a justiciable controversy, he is, we believe, asserting that the issue of profits was not ripe for adjudication at the time the declaratory judgment was granted because the land had not been sold. In *Tooley* we stated the general rule that a justiciable controversy is "a controversy in which a claim of right is

asserted by the plaintiffs against the defendants who have an interest in contesting it." 77 Wis. 2d at 434. *Accord Pension Management, Inc. v. DuRose,* 58 Wis. 2d at 128; *State ex rel. La Follette v. Dammann,* 220 Wis. 17, 22, 264 N.W. 627 (1936). A justiciable controversy requires the existence of present and fixed rights in contrast to hypothetical or future rights. *Tooley, supra* at 434. *Pension Management, supra* at 128. This is where we believe justiciable controversy and ripeness overlap. *See: State ex rel. La Follette v. Dammann, supra* at 23.

We note that "threatened action" has been deemed sufficient to constitute a justiciable controversy. *See: Barry Laboratories, Inc. v. State Board of Pharmacy,* 26 Wis. 2d 505, 510, 132 N.W.2d 833 (1965) ; *Borden Co. v. McDowell,* 8 Wis. 2d 246, 256, 99 N.W.2d 146 (1959). In the 1967 declaratory judgment action, Vander Heyden and Fons asserted in their amended complaint that the defendant "threatened to place some document of record in the Office of the Register of Deeds of the county in which this land is located sufficient to prevent the plaintiffs from dealing with the said real estate so as to protect their investment and best interest." Accordingly, Vander Heyden and Fons requested the court to declare what interest, if any, Mark had in the property. We conclude that an interest in the proceeds or profits from the sale of the property was a claim both plaintiffs and defendant had an interest in protecting. This is certainly evidenced by Moskowitz's proposed answer to the Vander Heyden and Fons complaint in the 1967 default judgment. We further hold that an *interest* in profits in this case is not hypothetical or abstract. Although an actual monetary amount could not be determined in the declaratory judgment action, resolution of what interest, if any, Mark had in the land or profit was necessary to afford

relief from uncertainty and insecurity, as provided by sec. 806.04(12), Stats. This is consistent with the purposes and principles of declaratory judgments and res judicata. "The mere fact that future interests are involved in the action will not defeat the power of the court to declare rights." 26 C.J.S. *Declaratory Judgments* sec. 70 (1956).

Our review of the record in this case leads us to the conclusion that the interest in profits from the proceeds of the future sale of the property was before the court when the declaratory judgment was entered. We further conclude that Judge Drechsler, when he granted the declaratory judgment giving Vander Heyden and Fons the relief demanded in their complaint, barred Mark and all persons claiming under him from any "interest in the property or the proceeds thereof," and extinguished any right Mark and his receivers had to any profits derived from the sale of the property. We conclude that, although Judge Drechsler used the word "proceeds" in his judgment, this included profits for two reasons: First, Judge Drechsler's findings of fact and conclusions of law referenced earlier in this opinion deal with the issue of profits as it was asserted in the Vander Heyden and Fons complaint. The fact that receiver Moskowitz attempted, after entry of judgment, to answer addressing this issue illustrates that he recognized this to be a triable issue, which he had an interest in contesting. In order to give full effect to Judge Drechsler's judgment, we are obliged to construe it to apply to profits. Second, we would also note that extinguishing an interest in proceeds, by necessity, extinguishes an interest in profits. Proceeds are a condition precedent to profits. If one has no interest in proceeds, one likewise has no interest in profits, for profits are derived from proceeds. We note that receiver Klaus admits to this logic in his "Brief

Upon Defendant's Motion to Dismiss" where he concludes: "So in the instant case, the purchase price of the land in the sum of approximately $168,000.00 . . . would be the proceeds of the sale."

Receiver Klaus urges us to find highly significant the fact that Judge Drechsler denied his predecessor receiver's (Moskowitz) motion to reopen the default judgment and allow him to answer on the issue of profits *without prejudice* to be controlling evidence that the default judgment did not encompass profits. If interests in profits were extinguished by the judgment, Klaus asserts that this motion would have been denied *with prejudice*. We must not, however, speculate as to why Judge Drechsler dismissed the receiver's motion without prejudice. Our examination of the proposed answer and counterclaims reveals that much of what is raised therein relates to other dealings between Mark and Vander Heyden which are not related to the present litigation but which the receiver brought "for the purpose of securing an adjudication upon all of these matters in a single proceeding." While we will not speculate as to why the motion to reopen was dismissed without prejudice, we note that the time for moving to reopen had not expired at the time the receiver's motion was denied. A literal reading of the pleading would lead to the conclusion that "without prejudice" related to subsequent motions to reopen within the statutory time limit. We do note that the receiver did not appeal Judge Drechsler's denial of his motion to reopen judgment within the statutory time limit, and consequently he is barred from doing so now.

Res judicata has the effect of making a final adjudication conclusive in a subsequent action between the same parties, or their privies, as to all matters which were litigated in the former proceedings. *Leimert v. McCann,* 79 Wis. 2d 289, 293–94, 255 N.W. 2d 526

(1977). In the present controversy there is no dispute that the same parties or their privies were involved in both actions. Adjudicating the issue of profits was within the sound discretion of the trial court, and we find no abuse of discretion. Sec. 806.04(1), Stats., states that declaratory judgments shall have the force and effect of final judgments. We conclude that the issue of profits from the sale of the property was adjudicated by the 1967 declaratory judgment, and consequently the issue is res judicata in the present action.

*By the Court.*—The decision of the court of appeals is reversed, and the order of the trial court, dismissing the receiver's cause of action, is reinstated.