265 Wis.2d 64 (2003)
2003 WI 118
665 N.W.2d 899
Jerry TEAGUE, Plaintiff-Respondent,
v.
BAD RIVER BAND OF LAKE SUPERIOR TRIBE OF CHIPPEWA INDIANS, Defendant-Appellant,
FIRST FINANCIAL BANK, Garnishee.
No. 01-1256.
Supreme Court of Wisconsin.
Oral argument November 7, 2002.
Decided July 17, 2003.
*67 For the defendant-appellant there were briefs by Henry M. Buffalo, Jr., John E. Jacobson, Peter G. Griffin, and Jacobson, Buffalo, Schoessler & Magnuson Ltd., St. Paul, Minnesota, and oral argument by John E. Jacobson.
*68 For the plaintiff-respondent there was a brief by Beth E. Hanan, Andrew W. Erlandson, and Reinhart, Boerner, Van Deuren, S.C., Milwaukee, and oral argument by Beth E. Hanan and Andrew W. Erlandson.
An amicus curiae brief was filed by Paul Stenzel and Stockbridge-Munsee Legal Office, Bowler; Kris Goodwill and Lac Courte Oreilles Legal Department, Hayward; Carol J. Brown and Brown & LaCounte, LLP, Madison; and Jennifer L. Nutt Carleton and Oneida Law Office, Oneida, on behalf of the Stockbridge-Munsee Community, Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wisconsin, Lac du Flambeau Band of Lake Superior Chippewa Indians, and Oneida Tribe of Indians of Wisconsin.
¶ 1. N. PATRICK CROOKS, J.
This case is before the court on certification from the Court of Appeals, District III, pursuant to Wis. Stat. § 809.61 (1999-2000).[1] The parties dispute whether a default judgment on the merits from the Bad River Band Tribal Court should be granted full faith and credit under Wis. Stat. § 806.245 when the same matter has also resulted in a judgment and orders from a Wisconsin circuit court. This case was certified by the court of appeals in order to resolve the issue of full faith and credit left unresolved in Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians, 2000 WI 79, 236 Wis. 2d 384, 612 N.W.2d 709 (Teague II).
¶ 2. I would hold that the circuit court was required by Wis. Stat. § 806.245 to give full faith and credit to the tribal court judgment declaring the employment contracts at issue void and, thus, unenforceable. Accordingly, I would reverse the order denying a *69 motion to reopen the judgment of the circuit court, which awarded damages to Jerry Teague (Teague), and remand for dismissal of the complaint, along with the garnishment action brought on behalf of Teague. Since my holding would resolve the underlying dispute, I need not address the Band's other claims of error.[2]
¶ 3. Teague commenced this action in the Ashland County Circuit Court against the Bad River Band of Lake Superior Tribe of Chippewa Indians (Band) for breach of employment contracts. While this action was pending, the Band brought a declaratory judgment action in tribal court seeking a declaration that the contracts were invalid. Although Teague participated in discovery and was given proper notice of the proceedings, he refused to participate further in the tribal court proceedings.[3] On July 25, 1997, the tribal court held a hearing, reviewed the deposition transcripts and other discovery, which had been assembled in both cases, and granted the Band's motion for a default judgment. The Bad River Tribal Court found that both the 1993 and 1995 employment agreements between Teague and the *70 Band were void. See Bad River Tribal Court Findings of Fact, Conclusions of Law and Order for Default Judgment (R. 103:51-55).
¶ 4. Though both the circuit court and tribal court were aware of suits in the other court, each continued with its proceedings. The tribal court proceeded to a hearing on the breach of contract claims and was the first to grant judgment. The tribal court entered a default judgment against Teague.[4] In the circuit court, Teague commenced a garnishment action after the circuit court had rendered its judgment awarding damages to Teague. The Band unsuccessfully asked the circuit court to dismiss the garnishment action. Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians, 229 Wis. 2d 581, 599 N.W.2d 911 (Ct. App. 1999) (Teague I). The Band then appealed the circuit court's judgment awarding Teague damages for breach of contract and, with leave of the court of appeals, appealed the circuit court's refusal to dismiss the garnishment proceeding. The court of appeals reversed the judgment and order on the grounds that the circuit court was required to give full faith and credit to the tribal court's judgment under Wis. Stat. § 806.245. Id. The court of appeals did not reach other issues raised on appeal, because the finding regarding full faith and credit disposed of the case. Id. at 584.
*71 ¶ 5. Pursuant to our comments in Teague II, and comments by the court of appeals, the circuit courts in the 10th Judicial Administrative District and the Chippewa tribal courts successfully drafted and agreed to protocols.[5] It is important to note that at the time of the comity conference regarding jurisdiction, only the Draft Protocol was in existence. The Final Protocol had yet to be adopted. Although the Final Protocol retains much of the Draft Protocol, it specifies additional considerations in determining the allocation of jurisdiction (see Tribal/State Protocol for the Judicial Allocation of Jurisdiction Between the Four Chippewa Tribes of Northern Wisconsin and the Tenth Judicial District of Wisconsin, § 7, Bad River's Appendix 000225-000227 (2001)). More importantly, the Final Protocol contains a mechanism for resolving deadlocks, such as the deadlock that occurred at the comity conference between the circuit court and the tribal court in this case (see Final Protocol, § 6(c)).[6] Finally, it is important to note that, at *72 this time, the Final Protocol has application only to the tribes located within the 10th Judicial Administrative District. The Final Protocol does not apply to all tribes and circuit judges throughout the State of Wisconsin.
¶ 6. As noted above, on remand the circuit court and the tribal court were unable, at a jurisdictional allocation conference, to resolve the central conflict in this case. The circuit court denied the Band's motion under Wis. Stat. § 806.07 for relief from the judgment. Both the tribal court and the circuit court refused to withdraw their earlier judgments. The Band appealed the circuit court's decision to the court of appeals. The Court of Appeals, District III, certified this case to resolve the full faith and credit issue left undecided in Teague II.

I. FACTS
¶ 7. The relevant facts are not in dispute and were adequately set forth in detail in Teague II, 2000 WI 79, and are, therefore, set forth in a more summary fashion here.
¶ 8. The Band is a federally recognized Indian tribe, which possesses inherent powers of self-government over its members and its territory pursuant *73 to the Indian Reorganization Act of 1934 (IRA), 25 U.S.C. §§ 461-479 (1983). As a government, the Band is governed by two documents: the Bad River Band of the Lake Superior Tribe of Chippewa Indians Constitution adopted under Section 16 of the IRA, and a corporate charter issued by the Secretary of the U.S. Department of Interior pursuant to Section 17 of the IRA. See 25 U.S.C. §§ 476 & 477 (1983).
¶ 9. The Band operates a tribal enterprise, the Bad River Casino, on its reservation in accordance with the Indian Gaming Regulatory Act, 25 U.S.C. § 2701. Teague was hired in April 1993 to manage the casino. He served as the casino general manager from April 1993 to July 1995.
¶ 10. Teague's employment as gaming general manager was formalized in contracts drafted in 1993 and again in 1995. The 1993 contract was for a three-year employment period and was signed by the tribal chairperson, Donald Moore, Sr. The 1995 contract was signed by Teague and Moore's successor, then tribal chairperson Elizabeth Drake, and provided for an increase in severance and bonus benefits. While the tribal chair signed the 1995 contract, the tribal council failed to ratify this agreement. The Bureau of Indian Affairs did not approve either contract. Both contracts contained a clause that provided for disputes over termination of the agreement to be handled by arbitration, pursuant to Chapter 788 of the Wisconsin statutes.
¶ 11. In the summer of 1995 Teague left employment with the Band and filed a suit in circuit court to compel arbitration on the 1993 and 1995 documents.[7]
*74 ¶ 12. Teague commenced his action in the Ashland County Circuit Court, the Honorable Thomas J. Gallagher presiding, against the Bad River Band of Lake Superior Tribe of Chippewa Indians alleging breach of employment contracts. In September 1996 the Band made a motion to dismiss the case on sovereign immunity grounds, which the circuit court denied. Teague I. The circuit court determined that the arbitration clause in the documents along with the "sue or be sued" clause in the Band's corporate charter, waived the Band's sovereign immunity.[8] The Band did not appeal this ruling. One month later, in October 1996, the Band amended its answer to include an affirmative defense, alleging that the employment agreements were invalid because they did not comply with the requirements of the Band's corporate charter.[9] No objections were made to the Band's amended answer.
*75 ¶ 13. In December 1996, while the circuit court case was pending, the Band filed a complaint in the Bad River Tribal Court seeking a ruling on the validity of the 1995 agreement, but subsequently amended the complaint to include the 1993 agreement also. In January 1997 the Band sought a stay in the circuit court proceedings contending that the validity of the contracts raised fundamental questions of tribal law. The Band claimed that notions of comity and the tribal exhaustion doctrine necessitated that the Band have the first opportunity to resolve the matter.[10] The circuit court denied the Band's motion for a stay in February 1997.
*76 ¶ 14. In March 1997 the Band filed a second amended complaint, which addressed the formation of the agreements, as well as the actual and apparent authority of the tribal chair to act on behalf of the tribal council.[11] Teague acknowledged personal service of the Band's complaint and participated in discovery, but refused to participate further in the tribal court proceedings. Accordingly, Teague failed to plead responsively in the tribal court, failed to seek a stay of the tribal court proceedings, and failed to appear before the tribal court in order to challenge its personal or subject matter jurisdiction. After due notice to Teague the Band filed for, and obtained, a default judgment in tribal court which declared the 1993 and the 1995 agreements void.[12] While the circuit court was aware of the tribal court proceedings, it proceeded to grant a judgment to Teague after the tribal court had already granted its judgment. Teague then sought to enforce the circuit court judgment through garnishment.
¶ 15. The Band appealed both the circuit court's judgment, and its refusal to dismiss the garnishment action, to the court of appeals. That court reversed in 1999, concluding that the circuit court was required, based on Wis. Stat. § 806.245, to give full faith and credit to the tribal court's default judgment, which had concluded that the contracts were void and not binding on the Band.
*77 ¶ 16. This court reversed the court of appeals' decision concluding that the issues of full faith and credit could not be considered until the issue of judicial allocation of jurisdiction pursuant to principles of comity was addressed. See Teague II, 2000 WI 79, ¶ 37. As a result, the case was remanded for a jurisdictional allocation conference to apply the principles of comity. This court ordered the circuit court and the tribal court to "confer for purposes of allocating jurisdiction between the two sovereigns." Id. As noted previously, the circuit court and the tribal court met, but no agreement was reached. After the jurisdictional allocation conference, both the circuit court and the tribal court refused to reopen their respective judgments.
¶ 17. The Band appealed the circuit court's decision to the court of appeals. The court of appeals, District III, certified the case to this court to resolve issues left undecided in Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians, 2000 WI 79, 236 Wis. 2d 384, 612 N.W.2d 709 (Teague II).

II. FULL FAITH AND CREDITWIS. STAT. § 806.245
¶ 18. The Band contends that this case should be dismissed because the circuit court failed to give full faith and credit to the tribal court's decision.[13]
¶ 19. Teague, however, disagrees and argues that the circuit court properly exercised discretion to reaffirm denial of the Band's request for Wis. Stat. § 806.245 recognition of the tribal court judgment. See Pl.-Resp't Br. at 25-40. Accordingly, Teague maintains *78 that the circuit court's exercise of discretion should be affirmed because that court examined the relevant facts, applied the proper standard of law, and reached a conclusion a reasonable court could reach.[14]
¶ 20. In support of his argument Teague argues that the circuit court considered and applied the principles of comity established in Teague II and the various draft protocols in reaching its decision.[15] He has also argued that the action was filed first in state court; therefore, the decision in that court controls. As a result, Teague maintains that the circuit court duly followed the instructions of this court and applied principles of comity to the facts presented. To further support his position Teague maintains that statutory factors, under Wis. Stat. § 806.245, do not prevent affirmance because resolution of this case does not depend on a question of full faith and credit under the statute. Instead, Teague argues that given the unique nature and history of the parties' dispute, comity and jurisdictional allocation control, because the Teague II opinion did not address the statutory factors.
¶ 21. I disagree with Teague's analysis of the statute. Wisconsin Stat. § 806.245 is titled, "Indian tribal documents: full faith and credit" and clearly applies in this case because the tribal court judgment meets all of the statutory requirements. It appears that *79 Teague does not dispute that the requirements of the statute are met; instead, he claims that the express terms of the statute no longer control this case. Teague's argument, however, misinterprets our opinion in Teague II.
¶ 22. In Teague II this court directed the circuit court and the tribal court to consider comity and jurisdictional allocation issues. We directed that comity issues be considered to resolve this matter before we would apply the statute. While this effort was successful in helping to foster the process resulting in the adoption of protocols, and in encouraging communication between the tribal court and circuit court, it was unsuccessful in resolving these matters.[16] We must, therefore, now apply Wis. Stat. § 806.245.
¶ 23. This case requires the interpretation and application of the full faith and credit statute, Wis. Stat. § 806.245, to the facts. This case, thus, presents a question of law that we review de novo. Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians, 2000 WI 79, 236 Wis. 2d 384, 612 N.W.2d 709 (Teague II). The goal of statutory interpretation is to discern and give effect to the intent of the legislature. *80 County of Jefferson v. Renz, 231 Wis. 2d 293, 301, 603 N.W.2d 541 (1999). This court must first look to the plain language to discern intent. Id. at 301-02. If the language of the statute is plain and unambiguous, this court need not look beyond it to determine the meaning of the statute. City of Muskego v. Godec, 167 Wis. 2d 536, 545, 482 N.W.2d 79 (1992). If the statute is ambiguous or unclear, this court may look to the legislative history and other extrinsic evidence to discern legislative intent. Renz, 231 Wis. 2d at 302. In this case, I conclude that Wis. Stat. § 806.245 is clear and unambiguous. I, therefore, apply the clear statutory provisions to the undisputed facts of the case.
¶ 24. Wisconsin Statute § 806.245(1) provides:
806.245. Indian tribal documents: full faith and credit.
(1) The judicial records, orders and judgments of an Indian tribal court in Wisconsin and acts of an Indian tribal legislative body shall have the same full faith and credit in the courts of this state as do the acts, records, orders and judgments of any other governmental entity, if all of the following conditions are met:
(a) The tribe which creates the tribal court and tribal legislative body is organized under 25 USC 461 to 479.
(b) The tribal documents are authenticated under sub. (2).
(c) The tribal court is a court of record.
(d) The tribal court judgment offered in evidence is a valid judgment.
(e) The tribal court certifies that it grants full faith and credit to the judicial records, orders and judgments of the courts of this state and to the acts of other governmental entities in this state.
*81 The statute reflects the belief that Indian tribes are considered "domestic dependent nations" and, therefore, "exercise inherent sovereign authority over their members and territories." Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe, 498 U.S. 505, 509 (1991). Under federal law, Indian tribes are separate sovereigns. California v. Cabazon Band of Mission Indians, 480 U.S. 202, (1987). According to the Restatement (Second) of Conflicts § 86, when courts of separate sovereigns both have jurisdiction over the same matter, the court first rendering judgment is commonly entitled to have its judgment receive full faith and credit by the other jurisdiction.
¶ 25. While Teague has argued that this may result in a rush to judgment, and, therefore, that the "first to file" rule[17] as established in Syver v. Hahn, 6 Wis. 2d 154, 95 N.W.2d 161 (1959), should be implemented, adoption of that rule would be inconsistent with Wis. Stat. § 806.245 and was rejected by this court in Teague II. The statute is a declaration by the Wisconsin Legislature that state courts are required, if the statutory conditions are met, to give tribal court judgments full faith and credit. If a tribal court judgment, therefore, meets all of the statutory requirements, full faith and credit must be accorded to it. As noted above, Teague has argued that the Syver "first to file" rule should apply in this case. As we stated in Teague II this argument fails because unlike circuit courts within the state, which possess concurrent jurisdiction, tribal courts are courts of separate sovereign entities. State circuit courts, therefore, have no authority *82 to limit, modify or control the power of the tribal court or vice versa. In this case the tribal court issued its judgment first; therefore, the question before this court is whether or not that judgment is valid and, therefore, entitled to full faith and credit under Wis. Stat. § 806.245.
¶ 26. In considering the statutory requirements contained in Wis. Stat. § 806.245(1)(a)-(e), I would find that all have been met in this case. Wisconsin Stat. § 806.245(1) states that judgments of an Indian tribal court in Wisconsin "shall have the same full faith and credit in the courts of this state as do the acts, records, orders and judgments of any other governmental entity ..." if certain conditions are met. (Emphasis added.)[18] In the lower courts questions were raised by Teague regarding Wis. Stat. § 806.245(1)(d), concerning the validity of the tribal court judgment in this case.
¶ 27. In order to determine if a tribal court judgment is valid, I look to Wis. Stat. § 806.245(4), which includes six statutory requirements that must be met before the tribal court judgment will be considered valid as required by Wis. Stat. § 806.245(1)(d).
¶ 28. However, before applying the statutory requirements, it is important to discuss what occurred at the tribal court hearing. Pursuant to the Band's motion for default judgment, notice was given of the motion for default judgment which was heard on July 25, 1997, at the Bad River Tribal Court, the Honorable Alton Smart, presiding. A written transcript of the proceeding was made available on August 18, 1997. Written Tr. of Proceeding, Bad River Tribal Court (R. 103:56-67).
*83 ¶ 29. At the tribal court hearing, John Jacobson, an attorney in the firm Jacobson, Buffalo, Schoessler & Magnuson, represented the Bad River Tribal Council. Jacobson presented the tribal court with a brief or memorandum in support of the Band's motion for default judgment and five exhibits. He also presented proposed findings of fact, conclusions of law, and order for default judgment to the tribal court.
¶ 30. The first exhibit presented by Jacobson was the acknowledgment of service of the second amended complaint in the matter, signed on March 25, 1997, by Michael Erhard, attorney for Teague.
¶ 31. The second exhibit presented was an affidavit from Joseph F. Halloran, also an attorney in the Jacobson law firm. The affidavit stated that on the 12th of May 1997 Halloran spoke by telephone with Michael Erhard, Teague's attorney, and Erhard informed Halloran that Teague did not intend to appear in these proceedings or participate in any fashion. He did acknowledge, however, the service of process. Apparently, it was Teague's view that his case in the circuit court against the Band might be jeopardized if he did participate.
¶ 32. The third, fourth, and fifth exhibits presented were the transcripts of the depositions of Donald Moore, Elizabeth Drake, and Jerry Teague.
¶ 33. Based on the information presented Judge Smart determined that the tribal court had jurisdiction, that Teague was served with a summons and a second amended complaint, that he failed to appear in the action, and that, he was, therefore, in default. Written Tr. of Proceeding, Bad River Tribal Court (R. 103:56-67). See also Bad River Tribal Court Findings of Fact, Conclusions of Law, and Order for Default Judgment *84 (R. 103:51-55). Upon reaching the conclusion that Teague was in default, Judge Smart stated on the record:
I will approve that motion [Motion for Default Judgment] there to, with the Findings of Fact that have already been presented here, I have read through them already, looked at them already, they pertain to what the proceedings are here today. Unfortunately, that Mr. Teague failed to respond to, to his right to be able to express his thoughts on these particular issues here at the Court at this time. Court does find him in a Default Judgment.
(R. 103:56-67)
¶ 34. Having considered the tribal court hearing and that court's granting of a default judgment, I now turn to the statutory requirements that must be met for the tribal court judgment to be considered valid in accord with Wis. Stat. § 806.245. Teague has claimed, specifically, that Wis. Stat. § 806.245(4)(c) and (d) were not satisfied in this case in that the judgment was not on the merits, and that it was procured by fraud and coercion. I would review all of the requirements of Wis. Stat. § 806.245(4), which provides:
806.245(4) In determining whether a tribal court judgment is a valid judgment, the circuit court on its own motion, or on the motion of a party, may examine the tribal court record to assure that:
(a) The tribal court had jurisdiction of the subject matter and over the person named in the judgment.
(b) The judgment is final under the laws of the rendering court.
(c) The judgment is on the merits.

*85 (d) The judgment was procured without fraud, duress or coercion.
(e) The judgment was procured in compliance with procedures required by the rendering court.
(f) The proceedings of the tribal court comply with the Indian civil rights act of 1968 under 25 USC 1301 to 1341.
¶ 35. As noted above, in determining whether a tribal court judgment is valid, Wis. Stat. § 806.245(4)(a) requires the circuit court to determine that "[t]he tribal court had jurisdiction of the subject matter and over the person named in the judgment." Generally, the minimum contacts analysis, which applies to an assertion by a state court of jurisdiction over citizens of another state, established in Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945), has also been used when courts have considered the power of a tribal court to exercise jurisdiction over persons who are not members of the tribe. See Hinshaw v. Mahler, 42 F.3d 1178 (9th Cir. 1994).
¶ 36. Here, I am satisfied that the tribal court had both personal and subject matter jurisdiction. The case concerned purported contracts, which were signed on the Bad River Reservation for services to be performed on the reservation. For more than two years, Teague was in charge of the Band's biggest business.[19] He worked daily on the Bad River Reservation. His employment *86 contracts were signed on the reservation. Jurisdiction over such matters clearly is consistent with the minimum contacts requirement of Int'l Shoe, and with the Bad River Band Tribal Court Code. Moreover, personal jurisdiction over Teague seems conceded by virtue of his counsel's acknowledgement of service of process of the Band's amended complaint.
¶ 37. In addition, after service of the second amended complaint, Teague failed to file any responsive pleading, including one contesting jurisdiction.[20] This seems inconsistent with the exhaustion requirements set forth in Iowa Mutual Insurance Company v. LaPlante, 480 U.S. 9 (1987), in that Teague failed, in any form, to contest the tribal court's jurisdiction over him or over the agreements at issue.
¶ 38. Teague's contacts with the Band, the provisions of the tribal code, and his acceptance of service of process, gave the tribal court personal jurisdiction over him. See Montana v. United States, 450 U.S. 544 (1981).
¶ 39. With respect to subject matter jurisdiction, section 106.1 of the tribal court codethe jurisdictional section invoked by the Bandgives the tribal court jurisdiction over "all actions arising out of events or *87 occurrences on the Bad River Reservation". Resp't Br. of Band in Teague II, at 23 (citing App. 0202). It seems clear, based on undisputed facts, that there was subject matter jurisdiction in the tribal court. Section 112.2 of the Band's Rules of Civil Procedure provides that upon failure of a defendant to appear at the time stated in the summons, the plaintiff may proceed to offer evidence including proof that the defendant was served with a summons and complaint and the court may render a judgment granting such relief as requested in the complaint that the evidence warrants. See Bad River Tribal Court Findings of Fact, Conclusions of Law and Order for Default Judgment (Finding of Fact number 2) (R. 103:51-55).
¶ 40. The next statutory requirement, Wis. Stat. § 806.245(4)(b), states that the circuit court may examine the tribal record to assure that "[t]he judgment is final under the laws of the rendering court." Judge Smart's Findings, Conclusions, and Order, which were filed on August 18, 1997, clearly seem to reflect a final decision of the case before him.[21] Since no appeal was filed by September 17, 1997, the deadline for filing an appeal, the judgment of the tribal court is final for purposes of tribal court appellate practice as well.
¶ 41. Wisconsin Stat. § 806.245(4)(c) states that the circuit court may examine the tribal court record to determine if "[t]he judgment is on the merits." Here, the tribal court's judgment is valid on the merits notwithstanding the fact that Teague chose not to participate. Under Wisconsin law a default judgment is considered to be a judgment on the merits, as to matters which *88 were pleaded in the complaint.[22] This court has held that the preclusive effect of a default judgment extends to "the material issuable facts, which are well pleaded in the declaration or complaint." Klaus v. Vander Heyden, 106 Wis. 2d 353, 359-60, 316 N.W.2d 664 (1982). The specific matters pleaded in the amended complaint before the tribal court were: (1) that the purported contracts, executed by the tribal chairpersons, which Teague seeks to enforce were void because they had not been approved by the Bad River Tribal Council nor by the United States Department of Interior; and (2) that neither of the persons who signed the purported contracts could bind the Band based on the tribal constitution and corporate charter. Judge Smart made specific findings of fact and conclusions of law on each of those points pursuant to Rule 112.1 of the Band's Rules of Civil Procedure. Those findings and conclusions were on the merits of the action before him. Teague's claim that since the circuit court was reserving for its determination issues covering the validity and enforceability of the contracts, the tribal court could not reach the merits of those issues, is without legal support. The statute does not authorize a circuit court to deprive a tribal court of the right to decide such issues where the tribal court has jurisdiction over the person and subject matter involved.
¶ 42. Next, Wis. Stat. § 806.245(4)(d) permits the circuit court to examine the tribal court record to ascertain that "[t]he judgment was procured without *89 fraud, duress or coercion." In his brief in Teague II, Teague advanced several theories to support his argument that "fraud" and "coercion" tainted the tribal court proceedings, so as to bar a grant of full faith and credit to the tribal court judgment. First, Teague argued that the circuit court "believed that if the Band intended to expand its Tribal Court action, it should have first returned to state court." Resp't Br., Teague II, at 38 (citing Pet'r's Br., Teague II, at 42). Second, Teague maintained that "the Band's counsel failed to fully appraise the Tribal Court of the status of the state court proceedings." Id. He also maintained that he faced a dilemma as to whether to participate and litigate in two courts, and that this amounted to coercion.
¶ 43. The Band submits that the extensive record in the tribal court is without any support for these claims. I agree. There is nothing in the record to indicate that the circuit court directed the Band to return to state court before amending its pleadings in the tribal court. In addition, the Band's counsel explicitly informed the circuit court that "I wouldn't want to be precluded ... we'll have to consider whether or not we'll amend the complaint in Tribal Court," to which the Circuit Court simply said "Okay." Resp't Br. of Bad River Band in Teague II at 38. If Teague believed that the Band somehow improperly ignored the circuit court, it was incumbent upon him to inform either the circuit court or the tribal court or both.
¶ 44. Teague was represented by counsel throughout all of his court proceedings, including during the three depositions which were submitted to the tribal court. Through counsel, Teague expressly declined to participate further in the tribal court proceedings. At no time did he file any objection to the judge appointed to hear his case, or to the procedure in the *90 tribal court, or any other aspect of the tribal court process. The Band's counsel sent Teague's counsel a copy of Judge Smart's August 18, 1997 Findings of Fact, Conclusions of Law and Order for Default Judgment, and again no allegation of fraud, duress, or coercion was raised as to that record.
¶ 45. Furthermore, as noted previously, in the tribal court proceedings, the Band's counsel filed an affidavit that recited a telephone conversation that the Band's counsel had with Teague's counsel. The affidavit stated that Erhard, Teague's attorney, informed Attorney Halloran that Teague did not intend to appear in these proceedings or participate in any fashion, although he did acknowledge the service of process. See Resp't Br. of Bad River Band in Teague II at 39. During the motion for default judgment hearing, the Band's counsel pointed out to the tribal court that Teague did not file an answer or motions, and, therefore, he was in default. The Band's counsel also indicated that while Teague had litigation pending in a different court that should have had no influence over Teague's decision not to participate in the tribal court proceedings. Id. at 39.
¶ 46. As a result of the affidavit and the presentation made to the tribal court, it is clear that the tribal court was informed of the existence and nature of the circuit court proceedings. There is nothing in the record to indicate that the tribal court was misled about the status of the circuit court action or that fraud was practiced upon it in any manner. Teague could have sought comity from the tribal court for the circuit court's actions, but he failed to do so. If Teague thought that the tribal court was not "fully appraised," he could have done so, but did not. Teague's claim that he was in a dilemma over whether to participate in the tribal *91 court proceedings, and thus to have to litigate his claim in two courts, does not amount to coercion.
¶ 47. The next statutory requirement, Wis. Stat. § 806.245(4)(e), authorizes the circuit court to examine whether a tribal court judgment "was procured in compliance with procedures required by the rendering court." In this case, all of the pleadings, motions, service of process, notices and hearings appear to comply with those portions of the tribal court code that are referred to in the record before us. There is nothing to indicate anything out of the ordinary or irregular with regard to the record of the tribal court.
¶ 48. Finally, Wis. Stat. § 806.245(4)(f) provides that the circuit court may examine the tribal court record to determine if "[t]he proceedings of the tribal court comply with the Indian civil rights act of 1968 under 25 USC 1301 to 1341." The Indian Civil Rights Act imposes most of the requirements of the Bill of Rights on Indian tribal governments. The affidavit of the tribal court clerk, Robin F. Powless, states that the Bad River Band Tribal Court applies, and complies, with that Act and the record seems to reflect the same. There is no suggestion that Teague was denied due process or equal protection. It appears that he was afforded all of the rights required by the tribal court code. The tribal court made reasoned findings and conclusions based on the record which was established, among other things, on depositions that Teague participated in, and during which he was represented by counsel.
¶ 49. If the above statutory requirements are met, then full faith and credit is available under the statute. Based on the tribal court record and the analysis reflected in the Findings of Fact, Conclusions of Law, and Order for Judgment, it seems clear that all of the *92 statutory requirements in Wis. Stat. § 806.245(4)(a)-(f) have been satisfied, and that the judgment rendered by the tribal court is a valid one.
¶ 50. Teague argues that if he had gone to tribal court, he may not have received a fair hearing. He justifies denying full faith and credit to the tribal court judgment on the absence of a jury system, lack of separation of powers, and no contract law for the Band. Nevertheless, neither the circuit court, nor Teague, has cited anything in the actual record of the tribal court proceedings that support the contention that full faith and credit should be denied on that basis. The Wisconsin Legislature has incorporated protections for a non-tribal member in Wis. Stat. § 806.245, while also respecting tribal court systems. It is clear that the statute allows state courts to examine the tribal court record, but not to question the tribal court structure beyond those conditions contained in the plain language of the statute.[23] The requirements of Wis. Stat. § 806.245 are stated in mandatory, not discretionary, terms and require that full faith and credit be given to the tribal court judgment rendered here. Wis. Stat. § 806.245(1) states, "The judicial records, orders and judgments of an *93 Indian tribal court in Wisconsin ... shall have the same full faith and credit in the courts of this state ...." (Emphasis added.) Since the conditions required by Wis. Stat. § 806.245 have been met, according full faith and credit to the tribal court's judgment is required.

III. CONCLUSION
¶ 51. I would hold that Wis. Stat. § 806.245 requires the circuit court to give full faith and credit to the Bad River tribal court judgment declaring the employment agreements void and, thus, unenforceable. As a result, I would reverse the order denying the motion to reopen the judgment of the circuit court, and we remand for dismissal of the complaint, along with the garnishment action brought on behalf of Teague.
By the Court.The order of the circuit court is reversed and the cause is remanded.
¶ 52. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (concurring).
Like Justice Crooks (author of the lead opinion), I would reverse the order denying the motion to reopen the judgment of the Circuit Court for Ashland County and remand the cause for dismissal of the complaint, along with the garnishment action brought on behalf of Teague. I reach the same result as Justice Crooks does in the lead opinion, but I use a different path to get there.[1]
¶ 53. This is a case in which both a state court and a tribal court have exercised jurisdiction over the same dispute between Teague and the Bad River Band about termination of Teague's employment with the tribe. *94 Teague first commenced an action in the circuit court for Ashland County. A second action was begun by the Bad River Band in tribal court one year later. Both courts had personal and subject matter jurisdiction. Though each court knew about the lawsuit pending in the other court, neither court communicated with the other. Either court could have followed the judicial doctrine of abstention and deferred to the other court but neither did.
¶ 54. The tribal court reached judgment first and the Bad River Tribe sought a stay of the proceedings in the circuit court. The circuit court refused to stay its proceedings or enforce the tribal court judgment. Instead, the circuit court also proceeded to judgment.
¶ 55. The two courts reached opposite results. Each party now wants this court to give effect to the judgment in its favor. The Bad River Band wants us to enforce the tribal court's judgment in its favor. Teague wants us to enforce the circuit court's judgment in his favor. Tensions abound when jurisdiction is concurrent.[2]
¶ 56. This is the second time we have been asked to resolve the dispute between Teague and the Bad River Band by deciding what effect should be given to each judgment. The first opinion proposed that principles of comity must guide both the circuit court and tribal court when they are faced with the dilemma of concurrent jurisdiction. The lead opinion concludes, in contrast, that the first court to reach judgment will be granted full faith and credit.
*95 ¶ 57. In our first decision, Teague II, the court froze the action when both the circuit and tribal courts were exercising jurisdiction and before either court had reached a judgment.[3] At that moment, this court refused to apply the "prior action pending rule" from Syver v. Hahn, 6 Wis. 2d 154, 94 N.W.2d 161 (1959), otherwise referred to as the race-to-the-courthouse rule. That is, we refused to hold that the first court in which the action was filed (here, the circuit court) should be the prevailing court by virtue of this timing alone. When both courts were exercising concurrent jurisdiction, this court also refused to hold that the first court to reach judgment (here, the tribal court) should prevail.[4]
[1]
¶ 58. In Teague II this court concluded, as I read the opinion, that when a state court and a tribal court exercise concurrent jurisdiction over the parties and subject matter and each court knows of the other's proceedings, Wis. Stat. § 806.245 is not yet applicable.[5] Rather, each court should stop its proceedings, consult with the other, and as a matter of comity decide which court should proceed. Consequently, in Teague II we *96 sent the case back for the two courts to get together and decide retrospectively as a matter of comity which court's proceedings should have gone forward.
¶ 59. Unfortunately each court refused to give way and the case is back in this court.
[2]
¶ 60. To resolve this deadlock, the lead opinion now freezes the action at a later point in time, when the tribal court has already reached judgment and the circuit court is still in the midst of conducting its proceedings. Viewed at this moment, the lead opinion concludes that Wis. Stat. § 806.245 does apply. According to the lead opinion, when both courts can exercise jurisdiction and "one court has rendered a judgment,"[6] the only remaining issue is whether that judgment, filed first, is entitled to full faith and credit under Wis. Stat. § 806.245.[7]
¶ 61. By shifting to this later point in the proceedings, the lead opinion effectively undermines the decision in Teague II. In Teague II we criticized first-to-judgment as a governing principle and decided that comity should be our guide;[8] the lead opinion now adopts the first-to-judgment principle, giving effect to the tribal court judgment merely because it came first. The lead opinion ignores the fact that the circuit court also reached a judgment arguably entitled to full faith and credit, just later.
¶ 62. The lead opinion in the present incarnation of this case is unsupportable. First, the statute says nothing about what a state court should do when an action is instituted in both a tribal court and state court *97 and the tribal court reaches judgment while the case is still pending in the state court. The lead opinion rewrites Wis. Stat. § 806.245 when it concludes that the statute directs the state court to halt its proceedings and apply full faith and credit to the tribal court judgment.
¶ 63. Second, the lead opinion has eliminated any incentive for tribal courts and state courts to cooperate with each other in cases of concurrent jurisdiction. The lead opinion suggests that its interpretation of Wis. Stat. § 806.245 and the Final Protocol adopted in the Tenth Judicial District are not in conflict as the former applies only when one court has already reached judgment and the latter applies before either court has reached judgment. Under the lead opinion's first-to-judgment principle, however, if either court disagrees with the decision reached under the protocol, or no protocol exists, each court can unilaterally take precedence by proceeding to judgment faster than the other court. The lead opinion in the present case undercuts the Teague II decision and renders it a nullity.
¶ 64. Third, the lead opinion's approach to Wis. Stat. § 806.245 leads to a potentially absurd result. That is, should a state court and a tribal court reach valid judgments at the same time, or both proceed to judgment unaware of the other's proceedings, the state court must give effect to the tribal court judgment and the tribal court must give effect to the state court judgment. Each court's judgment has no effect in its *98 own jurisdiction but is entitled to full faith and credit in the other court's jurisdiction.[9] This result cannot be right.
¶ 65. The issue here is which court properly proceeded to reach a judgment in this case despite its awareness that proceedings on the exact same dispute were taking place in the other court. Consequently, our focus must return to that point in the proceedings, pre-judgment, when both courts became aware of the other's concurrent exercise of jurisdiction.
¶ 66. I conclude, consistent with Teague II, that Wis. Stat. § 806.245 does not apply at that moment in time. Rather, general principles of comity, including principles of abstention, must be used to resolve the jurisdictional dispute presented to us.
¶ 67. As the lead opinion concedes, Wis. Stat. § 806.245 does not address the situation of parallel proceedings in both a tribal court and a state court.[10] The statute addresses the situation where a court, whether a state or tribal court, holds proceedings and enters judgment, and a party goes to a court of the other jurisdiction to enforce the judgment. That situation is not this case.
¶ 68. Moreover, as discussed above, if the state court interprets Wis. Stat. § 806.245 as a first-to-judgment rule, the result will be a race to judgment and state courts and tribal courts will have no incentive to work together in respect and cooperation to further the dignity of each court system and the orderly administration *99 of justice when both courts have concurrent jurisdiction. The lead opinion's application of § 806.245 in such situations fosters competition rather than cooperation between state and tribal courts; the lead opinion creates no room to use protocols to foster allocation of jurisdiction.
[3-6]
¶ 69. Thus, this case must be governed by principles of comity, not Wis. Stat. § 806.245. Comity is based on respect for the proceedings of another system of government and a spirit of cooperation. Comity endorses the principle of mutual respect between legal systems, recognizing the sovereignty and sovereign interests of each governmental system and the unique features of each legal system. It is a doctrine that recognizes, accepts, and respects differences in process. The doctrine of comity "is neither a matter of absolute obligation nor of mere courtesy and good will, but is recognition which one state allows within its territory to legislative, executive, or judicial acts of another, having due regard to duty and convenience and to rights of its own citizens."[11] Comity is discretionary, highly fact specific, and reviewable on appeal for erroneous exercise of discretion.
[7]
¶ 70. In the context of state-tribal relations, principles of comity must be applied with an understanding that the federal government is, and the state courts should be, fostering tribal self-government and tribal self-determination. Through principles of comity, federal and state governments can develop an increased *100 understanding of tribal sovereignty, encourage deference to and support for tribal courts, and advance cooperation, communication, respect and understanding in interacting with tribal courts.[12] "Central to tribal sovereignty is the capacity for self-government through tribal justice mechanisms.... [T]ribal justice systems are `essential to the maintenance of the culture and identity of Indian tribes.'"[13]
[8]
¶ 71. Against this backdrop, courts and scholars have developed a number of factors to help state and tribal courts determine, in the spirit of cooperation, not competition, which of two courts should proceed to judgment and which court should abstain and cede its jurisdiction. Though the weight to be given each factor will vary from case to case, the factors to be considered include the following:[14]

*101 1. Where the action was first filed and the extent to which the case has proceeded in the first court.
2. The parties' and courts' expenditures of time and resources in each court and the extent to which the parties have complied with any applicable provisions of either court's scheduling orders.
3. The relative burdens on the parties, including cost, access to and admissibility of evidence and matters of process, practice, and procedure, including whether the action will be decided most expeditiously in tribal or state court.
4. Whether the nature of the action implicates tribal sovereignty, including but not limited to the following:
a. The subject matter of the litigation.
b. The identities and potential immunities of the parties.
5. Whether the issues in the case require application and interpretation of a tribe's law or state law.
6. Whether the case involves traditional or cultural matters of the tribe.
7. Whether the location of material events giving rise to the litigation is on tribal or state land.
8. The relative institutional or administrative interests of each court.
9. The tribal membership status of the parties.
10. The parties' choice by contract, if any, of a forum in the event of dispute.
11. The parties' choice by contract, if any, of the law to be applied in the event of a dispute.

*102 12. Whether each court has jurisdiction over the dispute and the parties and has determined its own jurisdiction.
13. Whether either jurisdiction has entered a final judgment that conflicts with another judgment that is entitled to recognition.
¶ 72. In this case, principles of comity have been discussed but never properly applied. The circuit court attempted to apply principles of comity when the Bad River Band sought a stay of the state court proceedings in January 1997. The state court denied the Band's motion for a stay based on its belief that the case could not be resolved in its entirety by the tribal court, and on the grounds that the action was in state court first and was subject to Wisconsin state contract law.
¶ 73. Moreover, on remand from Teague II, the circuit court and tribal court attempted to cooperate and select between their competing judgments through principles of comity. Unable to do so, the circuit court again exercised its discretion in its March 27, 2001, order, concluding that "comity does not require that jurisdiction in this particular case be allocated to the tribal court."
[9]
¶ 74. The circuit court's March 27, 2001, order concluding that maintaining jurisdiction in state court is appropriate identified and discussed several of the above factors. The circuit court noted that the action was first filed in state court, that state court proceedings were relatively advanced by the time a jurisdictional allocation conference should have originally been held, that the law to be applied was predominately Wisconsin law, and that the parties' contractual choice of forum was state court. While it appears that the *103 contract had actually selected a choice of law (state arbitration law), not a choice of forum, the plaintiff selected the state court forum when he brought his action in the circuit court for Ashland County. The plaintiff's decision about where to bring the action is properly entitled to great weight.
¶ 75. I agree that these are appropriate factors for consideration and that, as identified by the state court, they favor state court jurisdiction in the present case.
¶ 76. The state court's order, however, identified and discussed only those factors that weighed in favor of state court jurisdiction. The state court never considered those factors that weigh in favor of tribal court jurisdiction, and the circuit court's failure to identify and balance those factors supporting tribal jurisdiction in the present case against the factors favoring state court jurisdiction was an erroneous exercise of discretion.
¶ 77. In the present case, balanced against the factors identified by the circuit court, are the following factors that favor the circuit court ceding jurisdiction to the tribal court:
(a) The nature of the action implicates tribal sovereignty. The subject matter of the litigation is the power of the tribe to enter into a contract, as well as the potential immunity of the tribe.
(b) The case also requires interpretation of tribal law.
(c) The material events relating to the litigation occurred on tribal land.
(d) The tribal court has an institutional interest in determining the validity of contracts between Indians and non-Indians, especially those involving contracts in which the tribe is a party and which relate to tribal *104 business; here the contract was between the tribe and a non-Indian relating to gaming run by the tribe.
¶ 78. Clearly, the decision in this case is difficult. There are factors that favor each court's exercise of jurisdiction. Yet in the end, I must conclude that the principles of comity favor the circuit court ceding jurisdiction to the tribal court in the present case.
¶ 79. The principles of comity applicable to state court-tribal court relations are built upon the goal of fostering tribal self-government through recognition of tribal justice mechanisms. Consequently, the significance of the plaintiff's choice of a forum and the application and interpretation of state law are out-weighed by the fact that the litigation involves tribal sovereignty and the interpretation of tribal law, and that the material events occurred on tribal land. Moreover, the fact that the circuit court had conducted significant proceedings before the tribal court even began to hear the case is outweighed by the tribal court's institutional interest in determining the validity of contracts made with the tribe.
¶ 80. Because the circuit court should not have proceeded to judgment, we now have only the tribal court judgment, and the issue is whether this judgment should be given effect under Wis. Stat. § 806.245. The lead opinion concludes that the tribal court judgment is entitled to full faith and credit under § 806.245 by formalistically applying the enumerated factors under § 806.245(1).
¶ 81. I am concerned, however, with this approach. Although titled and incorporating the phrase "full faith and credit," and recognizing the sovereignty *105 of tribes, the statute seems to be a blend of elements of constitutional full faith and credit, statutory full faith and credit, and comity.
¶ 82. Indeed the statute has been described as being more akin to international comity standards than to federal constitutional or state statutory full faith and credit standards for state court judgments.[15] As this court noted in Teague II, "Several commentators have *106 indicated that the Wisconsin tribal full faith and credit statute is more accurately characterized as a codification of principles of comity rather than the statutory equivalent of constitutional full faith and credit."[16] Persuasive authority characterizes Wis. Stat. § 806.245 as a comity statute that gives greater flexibility to both state and tribal courts in giving effect to the other's judgments than does the constitutional doctrine of full faith and credit.[17]
¶ 83. Nevertheless, Wis. Stat. § 806.245 may not be a pure comity statute. The statute lists specific criteria under which a tribal court judgment would not be given "full faith and credit." The criteria are broad, including the requirement that the tribal court proceedings comply with the Indian Civil Rights Act, which requires the guarantees of equal protection and due process.[18] It is not entirely clear, however, whether these statutory grounds are exclusive and thus limit a state court's discretion in applying the discretionary doctrine of comity.
*107 ¶ 84. Despite these problems with the interpretation of the statute, I conclude that the principles of full faith and credit and comity stated explicitly in or embedded in Wis. Stat. § 806.245 require us to enforce the tribal court judgment in the present case.
¶ 85. For the reasons set forth above, I would reverse the order denying the motion to reopen the judgment of the Circuit Court for Ashland County and remand the cause for dismissal of the complaint, along with the garnishment action brought on behalf of Teague.
¶ 86. I am authorized to state that Justices WILLIAM A. BABLITCH, ANN WALSH BRADLEY, and DIANE S. SYKES join this opinion.
¶ 87. JON P. WILCOX, J. (dissenting).
I believe that principles of comity constitute the proper approach in this case, and I believe the circuit court's discretionary decision based on those principles should be upheld. For these reasons, I respectfully dissent.
¶ 88. I agree with the characterization of the procedural status of the case in the majority opinion, and that, consistent with our holding in Teague II, the deadlock in this case should be broken by application of the principles of comity. Majority op., ¶¶ 53-59, 65-69. Unlike the majority, however, I conclude that the outcome resulting from application of those principles favors enforcement of the circuit court's judgment.
¶ 89. The case now arises before the court for review of the circuit court's denial of the motion by the Bad River Band of the Lake Superior Tribe of Chippewa Indians (the Band) to reopen the circuit court judgment. The circuit court's determination whether or not to open a judgment under Wis. Stat. § 806.07 (1999-2000) is discretionary and we will not overturn *108 such a ruling unless we find an erroneous exercise of discretion. Wisconsin Pub. Serv. Corp. v. Krist, 104 Wis. 2d 381, 394, 311 N.W.2d 624 (1981). In our first decision in this case, Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians, 2000 WI 79, ¶ 35, 236 Wis. 2d 384, 612 N.W.2d 709 (hereinafter Teague II), we held that comity "rests upon the exercise of sound judicial discretion." The majority acknowledges this standard as well, stating: "Comity is discretionary, highly fact specific, and reviewable on appeal for erroneous exercise of discretion." Majority op., ¶ 69. Thus, I believe it is appropriate that Judge Gallagher's application of and ruling upon the principles of comity receive deference.
¶ 90. In Teague II, we found it objectionable to endorse either a "race to the courthouse" or a "race to judgment," and asserted that "[e]ither choice would produce undesirable and unreasonable results, which we presume the legislature did not intend to encourage by the adoption of the tribal full faith and credit statute." Teague II, 236 Wis. 2d 384, ¶ 33. Rather than endorsing either of these options, we held that the question in the case was "not a question of full faith and credit under the statute but of judicial allocation of jurisdiction pursuant to principles of comity." Id., ¶ 34.
¶ 91. On March 8, 2001, as a result of this court's decision in Teague II, the state court and the tribal court, along with the parties, gathered for a conference in an attempt to use the principles of comity to determine which judgment should be enforced. After an extensive discussion, the circuit court denied the motion to reopen. I believe this decision is supported by the facts of record and should be affirmed.
¶ 92. I agree with the majority's assessment that this is a difficult case with factors cutting both ways. *109 Majority op., ¶ 78. Even accepting the factors for consideration listed by the majority in ¶ 71, I believe that the circuit court's ruling should be upheld. I believe all of the relevant circumstances were discussed at the conference, and because we are reviewing an exercise of discretion, we should not second-guess the weight given to the factors. Judge Alton Smart of the Bad River Band Tribal Court and Judge Gallagher, with full participation of the parties, discussed all aspects of the case, including the concerns of both courts relating to jurisdiction. Based on this extensive discussion, the ruling by this court in Teague II, and the draft protocol provisions and associated materials available at the time, Judge Gallagher denied the motion to reopen, essentially affirming that the circuit court's assertion of jurisdiction was appropriate.
¶ 93. Comity is grounded in the idea of mutual respect between courts; that does not mean that state courts must always concede jurisdiction to the tribal courts. In Teague II, 236 Wis. 2d 384, ¶ 35, this court stated:
Until then [when protocols are developed], we must rely upon the traditional doctrine of comity, pursuant to which courts will as a matter of discretion rather than obligation defer to the assertion of jurisdiction or give effect to the judgments of other states or sovereigns out of mutual respect, and for the purpose of furthering the orderly administration of justice.

(Emphasis added.) This court has accepted the orderly administration of justice as a purpose underlying the comity doctrine. If that purpose is to be given meaningful effect, state court jurisdiction should be found appropriate under the facts presented. Here, the action in state court was filed first and proceeded for over a year before the Bad River Band even brought suit in *110 tribal court. Motions were ruled upon and extensive discovery had taken place in the circuit court action long before the action in tribal court began. In fact, in ruling to deny the motion to reopen, the circuit court noted that it had ruled upon the waiver of sovereign immunity issue before the tribal court proceedings began. At the conference, the judges and parties discussed the issue of the validity of the contracts. Following the discussion, Judge Gallagher decided the contract predominantly dealt with state contract law and also found that the choice of forum clause in the contracts favored state jurisdiction.
¶ 94. The finding of state court jurisdiction is in no way a statement regarding the ability of tribal courts to address cases such as this. Judge Gallagher openly conceded that jurisdiction was concurrent. Rather, the question is which judgment to enforce when both courts went ahead, cognizant of the other's proceedings. I believe Judge Gallagher could appropriately find that, under the specific circumstances presented, the extent of the state court proceedings and the nature of action itself outweighed the factors favoring tribal court jurisdiction. While members of this court may reach a different conclusion, our review is whether there is basis for the circuit court's decision. Because I believe such a basis exists, I respectfully dissent.
¶ 95. DAVID T. PROSSER, J. (dissenting).
This case presents a wide array of delicate legal issues. The issue on which the case turns is the applicability and *111 interpretation of Wis. Stat. § 806.245. It is vital to place this issue in a factual context.[1]
¶ 96. Jerry Teague was employed by the Bad River Band of Lake Superior Tribe of Chippewa Indians as its gaming manager from April 1993 to July 1995. According to the statement of facts in Teague's briefs, Teague, a non-Indian, began work under the supervision of Tribal Chair Donald Moore. Moore was pleased with Teague's performance and, after Teague had gone through a probationary period, Moore offered him an employment contract. Moore was apprehensive about his re-election prospects in the fall of 1993, and he wanted to assure continuity in the Band's gaming operation. Moore believed that a contract providing Teague with severance pay would prevent Teague's arbitrary termination.
¶ 97. In October 1993 Teague met with Moore and the Band's attorney, David Siegler, to discuss the terms of a contract. Teague insisted that the Band include an arbitration clause to avoid having disputes resolved in the Bad River Tribal Court. Moore and Siegler later drafted a document reflecting the parties' discussions.
¶ 98. On November 2, 1993, Moore was defeated for re-election. The following day, the Tribal Council authorized Moore to sign the Teague agreement with minor changes. On November 5 Teague and Moore signed the 1993 contracta three-year agreement with an arbitration clause.
¶ 99. Teague signed a second contract on March 15, 1995. The contract was co-signed by Elizabeth *112 Drake, Moore's successor as Tribal Chair. Teague and Drake worked well together, and the new chair agreed to renegotiate Teague's 1993 contract. The new contract also had an arbitration clause.
¶ 100. The Bad River Band disputes some of these facts. For instance, the narrative in its brief indicates that one version of the 1993 agreement was approved by the Tribal Council but its terms were altered before it was signed by Moore. The Band claims that this signed agreement was not reconsidered by the Tribal Council, and that the 1995 contract was never voted on by the Tribal Council.
¶ 101. There is no dispute that neither contract was submitted to or approved by the Secretary of the United States Department of Interior or the Secretary's duly authorized representative. The Band asserts that such approval was essential to the validity of the contracts.
¶ 102. Teague was terminated by Tribal Chair Elizabeth Drake on July 18, 1995. He brought suit on November 17, 1995, in Ashland County Circuit Court to compel arbitration under the 1995 contract or, in the alternative, secure damages for breach of contract. The Bad River Band was the named defendant in this suit. The Band actively participated in the litigation, answering the complaint, asserting sovereign immunity, and resisting Teague's claim.
¶ 103. In December 1996, approximately 13 months after commencement of Teague's suit, the Band sued Teague in the Bad River Tribal Court alleging that the two contracts were invalid. It twice amended its complaint in that court. Teague did not answer the complaints or participate in tribal court proceedings. On July 25, 1997, the tribal court, Alton Smart, Judge, entered an order against Teague, holding the 1993 and *113 1995 contracts "void and of no effect." Teague was granted 20 days from this order to request, in writing, that the matter be reopened. On August 18, 1997, the tribal court issued written findings of fact and conclusions of law in a default judgment, formalizing its July 25 decision.[2] This was 21 months after Teague began his suit in Ashland County Circuit Court.
¶ 104. On February 12, 1998, an Ashland County jury determined that the 1995 contract was enforceable. The circuit court ordered arbitration, and on June 22, 1998, an arbitrator awarded Teague $390,199.42. The circuit court subsequently confirmed and entered judgment upon this award in the amount of $395,343.12.
¶ 105. This statement of facts is not complete in the sense that it does not record every argument, every motion, and all the skirmishes between the parties. Nor is it totally consistent with the statement of facts in Teague II. See n.1, infra. If there were no tribal court *114 judgment, the accuracy of the facts would be critical and we would be focusing our attention on legal arguments about the contracts, the evidence, the verdict, and the circuit court's judgment. However, because of the tribal court's judgment, the focus shifts to WIS. Stat. § 806.245.
¶ 106. Section 806.245(1) provides that "The . . . judgments of an Indian tribal court in Wisconsin . . . shall have the same full faith and credit in the courts of this state as do the . . . judgments of any other governmental entity, if all the following conditions are met:" The issue presented, assuming all the conditions in the statute are met, is whether the statute required the Ashland County Circuit Court to give full faith and credit to the Bad River Tribal Court's default judgment, even though that judgment came 21 months after suit on the same subject matter was filed in the circuit court. If the statute required the circuit court to extend full faith and credit to the tribal court judgment in late 1997, it presumably would have precluded the circuit court from conducting a jury trial in 1998 regarding Teague's alleged contracts. If the statute now requires the circuit court to extend full faith and credit to the tribal court judgment, it nullifies Teague's jury verdict, his arbitration award, and the subsequent judgment.
¶ 107. The lead opinion by Justice Crooks gives § 806.245 a literal interpretation. It finds the statute clear and unambiguous. Lead op., ¶ 25. It concludes that the statute "clearly applies in this case, because the tribal court judgment meets all of the statutory requirements." Id., ¶ 21. The lead opinion states:
The statute is a declaration by the Wisconsin Legislature, that state courts are required, if the statutory conditions are met, to give tribal court judgments full *115 faith and credit. If a tribal court judgment . . . meets all of the statutory requirements, full faith and credit must be accorded to it.
Id., ¶ 25.
¶ 108. Chief Justice Abrahamson's majority opinion provides a different interpretation. The majority opinion states: "In Teague II this court concluded . . . that when a state court and a tribal court exercise concurrent jurisdiction over the parties and subject matter and each court knows of the other's proceedings, Wis. Stat. § 806.245 is not applicable." Majority op., ¶ 58.
¶ 109. The majority opinion asserts that the lead opinion "rewrites Wis. Stat. § 806.245 when it concludes that the statute directs the state court to halt its proceedings and apply full faith and credit to the tribal court judgment." Id., ¶ 62. "I conclude, consistent with Teague II, that Wis. Stat. § 806.245 does not apply at that moment in time [when both courts became aware of the other's concurrent exercise of jurisdiction]. Rather, general principles of comity, including principles of abstention, must be used to resolve the jurisdictional dispute presented to us." Id., ¶ 66. The majority opinion then devises a list of 13 factors to consider in determining which court should proceed to judgment.
¶ 110. The majority opinion offers persuasive, logical reasons why § 806.245 does not apply to this case, and it provides a solid justification for examining the legislative history of the statute. In Teague II, the court cited some of the statute's legislative history but did not give a full picture. See Teague II, 236 Wis. 2d 384, ¶¶ 26-27.
*116 ¶ 111. Section 806.245 became part of the Wisconsin Statutes in May 1982. Representative Sharon Metz of Green Bay authored 1981 Assembly Bill 825, which ultimately became Chapter 369, Laws of 1981. The bill is marked as "LRB-3605/4," meaning that it was the 3605th bill request of the 1981 legislative session and that the fourth draft of the bill was the one introduced.
¶ 112. The bill evolved in the drafting and amendment process from a draft applying to the judgments of all tribes to a bill applying only to the judgments of the Menominee Indian Tribe of Wisconsin. After its introduction on October 6, 1981, the bill was successfully amended four times. The amendments limited the bill's application to the Menominee Tribe,[3] required that the full faith and credit in the bill be reciprocal,[4] beefed up subsection (3) to require a determination by the circuit *117 court that the tribal court is a court of record, and added paragraph (f) to subsection (4) to require tribal court compliance with the Indian Civil Rights Act of 1968.
¶ 113. 1981 Assembly Bill 825 was not a product of the Legislative Council. In the Assembly, it was referred to the Committee on Criminal Justice and Public Safety, not the Judiciary Committee. The bill spent only one day in the Senate's Judiciary and Consumer Affairs Committee near the end of the legislative session and then passed the Senate on a voice vote.
¶ 114. In the 1989 session, the Legislative Council established an Advisory Committee on Tribal Courts. The Advisory Committee and the American Indian Study Committee produced a draft leading to 1989 Assembly Bill 454, introduced by the Legislative Council. This bill had an extensive Prefatory Note, which included the following statements:
Current s. 806.245, stats., requires Wisconsin courts to give full faith and credit to proceedings of the Menominee tribal court and acts of the Menominee tribal legislature. The doctrine of full faith and credit requires a court to give the same force and effect to the judgments of another jurisdiction as it does to its own judgments. Most often, full faith and credit applies to the use of judgments in a collateral proceeding, such as when a decree of divorce in one state's court is taken into another state's court to obtain the division of property located in the 2nd state.
. . . .
The purpose of this bill is to extend the application of the current statute to all tribes in Wisconsin which have established a tribal court.
The bill clarifies the language of the statute and *118 repeals 4 of the conditions which are imposed in present s. 806.245(4), stats., on state court recognition of the proceedings of a tribal court. The 4 repealed conditions relate to: whether the judgment is on the merits; the absence of fraud, duress or coercion; compliance with tribal court procedures; and compliance with the Indian civil rights act. Although the current statute refers to full faith and credit, these conditions are not consistent with the doctrine of full faith and credit. Full faith and credit obliges one court to accept the judgments of another court, and these 4 conditions permit the state court to undertake a substantial review of the grounds for the tribal court judgment and the procedures followed by the tribal court.

Prefatory Note to 1989 A.B. 454, 1-2 (emphasis added).
¶ 115. The Assembly approved 1989 Assembly Bill 454 after defeating an amendment to delete the repeal of paragraphs (c) through (f) of subsection (4), but the bill was never given a hearing or taken up by the Senate.
¶ 116. In 1991 the Legislative Council introduced a new bill, 1991 Assembly Bill 260. This bill abandoned the effort to repeal the paragraphs in subsection (4) and was passed without amendment to become 1991 Wisconsin Act 43.
¶ 117. I draw several conclusions from this history. First, the legislature did not intend that § 806.245 replicate Article IV, Section 1 of the United States Constitution.[5] The legislature rejected the principle of constitutional full faith and credit when it added conditions *119 for full faith and credit to 1981 Assembly Bill 825 in 1982 and when it declined to pass 1989 Assembly Bill 454 in 1990.
¶ 118. Second, the legislature reserves the right to determine whose tribal judgments, if any, will be recognized and the conditions under which they will be recognized. The legislature declined to apply the bill to all tribal courts. In the beginning, it extended "full faith and credit" only to the Menominee Tribe; later it extended "full faith and credit" only to the judgments of other tribes and bands in Wisconsin. The legislature's exercise of discretion in recognizing the judgments of particular tribes stands in sharp contrast to the State's constitutional obligation to extend full faith and credit to the judgments of other states.
¶ 119. Third, the Bad River Band would be hard pressed to prove that the Wisconsin legislature ever contemplated a situation involving concurrent jurisdiction and competing judgments. Our court has already acknowledged as much. Teague II, 236 Wis. 2d 384, ¶ 33.
¶ 120. The Bad River Band seeks a "full faith and credit" equivalent to the full faith and credit between two states. It is in effect asking this court to hold that the Wisconsin legislature intended to accord judgments of the Bad River Tribal Court on any subject the same status as judgments of courts in, say, Michigan and Minnesota. The reasonableness of this proposition may be judged by looking at the evidence presented to the legislature by the Advisory Committee on Tribal Courts.
*120 ¶ 121. The Advisory Committee conducted a survey of Wisconsin tribal courts in 1988. Four of the state's tribes and bands indicated that they did not have a tribal court.[6]
¶ 122. The Bad River Band answered several of the survey questions as follows:
Under what authority is the tribal court established?
Constitution and bylaws
When was the tribal court first established?
1979 (also operated previously)
. . . .
What subjects are within the jurisdiction of the tribal court?
Natural resources, water and sewer, bingo, land leases, name changes, marriages
What subjects are not within the jurisdiction of the tribal court?
Criminal, traffic
How many judges does the tribal court have?
Two
Is there a chief judge?
Yes
Does the tribal court have reserve judges?
No

*121 Are the tribal judges employed full-time or part-time?
Part-time
Are the tribal judges elected or appointed to their positions?
Appointed
If tribal judges are appointed, who makes the appointment?
Tribal Council
For what period of time is a tribal judge elected or appointed?
Two years
Is there any limitation on the number of terms a tribal judge may serve?
None
What qualifications must a tribal judge have?
25 years old, general knowledge of Bad River laws
How many of the current tribal judges are lawyers?
None
What kind of training do the tribal judges participate in either before or during their tenure as tribal judge?
Various other training programs [not National Judicial College, Reno, NE, or National Indian Justice Center, Petalima, CA, or American Indian Lawyer Training Program]
. . . .
Does the tribal court have written rules of procedure?
Yes

*122 Are final judgments of the tribal court reviewable by a higher court or other appellate review?
Yes
If so, describe the nature of the review.
Three-judge panel appointed by Tribal Council
Wisconsin Legislative Council, Report No. 8 to the 1989 Legislature, 18-21, 23.
¶ 123. Today, Wisconsin tribal courts are more mature and sophisticated than they once were. Even so, given the structure of some tribes and bands, there are lingering concerns about judicial independence. In truth, there is little evidence that the Wisconsin legislature understood in 1991 the possible ramifications of § 806.245 for this state's courts and sovereignty.
¶ 124. This court needs to consider questions that it has never faced before. For instance, are there any circumstances in which a Wisconsin circuit court may refuse to give full faith and credit to a tribal court judgment if all the conditions in § 806.245 are met and there is no competing circuit court action or judgment? The majority opinion does not answer this question, while the lead opinion appears to say "no."
¶ 125. Suppose, for example, a tribal member suffers injury and damages on account of the negligence of a Wisconsin local government employee acting in an official capacity on tribal land. May the tribal member sue the local government employee in tribal court? If the answer is yes, suppose the tribal court refuses to apply the limitations on liability in Wis. Stat. § 893.80. Would the circuit court be bound by § 806.245 to give full faith and credit to the tribal court judgment?
*123 ¶ 126. The circuit court might look to § 806.245(4)(a) to determine whether the tribal court had jurisdiction of the subject matter and over the person named in the judgment. Even under constitutional full faith and credit, the court of one state may examine whether the other state had jurisdiction to decide the case. See Underwriters Nat'l Assurance v. North Carolina Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 704-05 (1982). Our hypothetical assumes, however, that all the conditions in the statute have been satisfied, including jurisdiction. It should be noted, parenthetically, that each tribe or band determines the jurisdiction of its own court, so long as that jurisdiction conforms to any limitations imposed by federal law.
¶ 127. The bottom line is this: If a Wisconsin court were to extend full faith and credit to the judgment of the tribal court in this hypothetical circumstance, it would treat one of our citizens differently from the way it would treat the rest of our citizens, and it would disregard the conditions the legislature has set on tort suits against our own local governments. In my view, the text of § 806.245 does not provide the answer to how a Wisconsin court should proceed.
¶ 128. Wisconsin has been given concurrent jurisdiction over civil causes of action to which Indians are parties that arise in the areas of Indian Country in Wisconsin. See Public Law 280, as codified at 28 U.S.C. § 1360(a). In my view, § 806.245 does not require Wisconsin courts to yield this jurisdiction and extend full faith and credit to a tribal court judgment in every circumstance. Our legislature would not expect or intend that Wisconsin courts subordinate Wisconsin laws and policies or undercut Wisconsin courts if a tribal court judgment intruded too deeply into an area of *124 fundamental concern. See Ruth B. Ginsburg, Judgments in Search of Full Faith and Credit: The Last-In-Time Rule for Conflicting Judgments, 82 Harv. L. Rev. 798, 832 (1969).
¶ 129. The legislature probably did not consider the present situation, but that does not necessarily mean that the statute does not apply. The court should apply the statute, giving it a reasonable construction.
¶ 130. The statute provides that "judgments of an Indian tribal court in Wisconsin . . . shall have the same full faith and credit in the courts of this state as . . . the judgments of any other governmental entity." (Emphasis added). What does the phrase "judgments of any other governmental entity" mean? We have already established that "judgments of any other governmental entity" does not mean the judgments of another state, for § 806.245 does not require a circuit court to treat judgments of a Wisconsin tribal court the same as judgments of another state. Quebec, Canada, and Chiapas, Mexico, are governmental entities, but Wisconsin courts are not required to give full faith and credit to the judgments of these foreign governmental entities. The Navajo Tribe and the San Carlos Apache Tribe are governmental entities, but § 806.245 does not require that circuit courts accord full faith and credit to the judgments of these out-of-state tribes.[7] A Wisconsin municipal court is a governmental entity, but the judgments of a municipal court are often subject to a de novo trial. See Wis. Stat. § 800.14(4). Clearly, the phrase "judgments of any other governmental entity" needs construction.
*125 ¶ 131. In my view, until the legislature clarifies its intent, judgments of a Wisconsin tribal court should be treated the same as judgments of a Wisconsin circuit court. Under this theory, the Ashland County Circuit Court's invocation of Syver v. Hahn, 6 Wis. 2d 154, 94 N.W.2d 161 (1959), which embodies the "prior action pending rule," makes perfect sense and should have been affirmed, leaving only legal issues about the merits of the circuit court's judgment.
¶ 132. In Teague II, we held otherwise, stating that "the prior action pending rule of Syver does not apply to these circumstances because an Indian tribal court is a court of an independent sovereign." Teague II, 236 Wis. 2d 384, ¶ 2. Teague II provided the following analysis:
The statute is notably silent as to the jurisdictional validity of a tribal judgment that is rendered while an earlier-filed state court action regarding the same subject matter is pending. Teague argues for the application of the general rule governing jurisdictional tug-of-wars between courts of concurrent jurisdiction within the state. It is well-established in Wisconsin that when two courts possess jurisdiction over a particular subject matter and one of the courts has assumed jurisdiction, it is reversible error for the other to also assume jurisdiction. Syver, 6 Wis. 2d at 154.; State ex rel. White v. District Court, 262 Wis. 139, 143, 54 N.W.2d 189 (1952); Kusick v. Kusick, 243 Wis. 135, 138, 9 N.W.2d 607 (1943).
Teague contends that this "prior action pending" rule should apply to the tribal court in this case because the tribal court is a court of concurrent jurisdiction under Public Law 280. True, there is concurrent subject matter jurisdiction in state and tribal court by virtue of Public Law 280. But it does not follow from *126 the fact of concurrent subject matter jurisdiction that the prior action pending rule of Syver should apply.
The cases Teague cites are distinguishable because they involve jurisdictional conflicts between Wisconsin courts of concurrent jurisdiction. . . . Here, although the tribal court is located within the geographic boundaries of the state, it is not a Wisconsin court; it is the court of an independent sovereign. Although full faith and credit here is statutory and conditional rather than constitutional and presumed, it would be incorrect, given the tribe's sovereign status, to apply a state court common law rule to find an erroneous assumption of jurisdiction by the tribal court.
In addition, applying the prior action pending rule to deprive tribal court judgments of full faith and credit under Wis. Stat. § 806.245 would distort the purposes of Public Law 280. Public Law 280 was not designed to deprive tribal courts of jurisdiction where they properly have it. . . .
Accordingly, we decline to extend the prior action pending rule of Syver to these circumstances.
Teague II, 236 Wis. 2d at ¶¶ 29-33.
¶ 133. In retrospect, this analysis misses the point. The fact that a Wisconsin Indian tribe is "an independent sovereign" does not dictate the applicable law. The intent of the Wisconsin legislature dictates the applicable law. The legislature intended to treat the judgments of a Wisconsin tribal court the "same" as the judgments of a Wisconsin circuit court, not superior to a Wisconsin circuit court. Section 806.245 should not be construed to deprive Wisconsin courts of jurisdiction that has been expressly given to them by Congress.
*127 ¶ 134. Whether Jerry Teague is entitled to his circuit court judgment is dependent upon the favorable resolution of several outstanding legal issues not addressed by this court. But he should not lose his judgment because of a misconstruction of Wis. Stat. § 806.245.
NOTES
[1] All subsequent references to the Wisconsin Statutes are to the 1999-2000 version unless otherwise indicated.
[2] The Band also asserts that the circuit court erred by: (1) estopping the Band from arguing as an affirmative defense that the employment contracts had not received federal approval as required by the Band's corporate charter; (2) excluding all Band tribal members from the jury pool; (3) excluding exhibits submitted by the Band; and (4) refusing to give jury instructions requested by the Band. Since my determination regarding the full faith and credit issues resolves this case, I will not review these other claims of error.
[3] While Teague acknowledged service of the Band's second amended complaint in this action, he failed to file an answer or responsive pleading or otherwise appear or participate in the proceedings.
[4] In the tribal court proceedings the Band's counsel filed an affidavit that recited a telephone conversation that the Band's counsel had with Teague's counsel. The affidavit states that on the 12th of May 1997 Attorney Joseph Halloran spoke by telephone with Michael Erhard, Teague's attorney, and Erhard informed Halloran that Teague did not intend to appear in these proceedings or participate in any fashion although he did acknowledge the service of process. Written Tr. of Proceeding, Bad River Tribal Court (R. 103:56-67).
[5] See Tribal/State Protocol for the Judicial Allocation of Jurisdiction Between the Four Chippewa Tribes of Northern Wisconsin and the Tenth Judicial District of Wisconsin (2001) (available online at http://www.wicourts.gov/media/pdf/tribal%20agree.pdf).
[6] Final Draft Protocol § 6(c) states:

If the judges are unable to allocate jurisdiction at their conference as provided for in section 6(b), above, a third judge will be selected. The judge will be selected from a standing pool of judges, composed of four circuit judges and four tribal judges. Circuit Judges shall be appointed to the pool by the Chief Judge of the Tenth Judicial Administrative District. The Chief Tribal Judge of each Tribal Court which has approved this Protocol, or his or her designee, shall serve on the pool. If fewer than four Tribal Courts approve this Protocol, then the Chief Judges of the Tribal Courts which do approve this Protocol shall jointly select a sufficient number of judges to bring the number of Tribal Judges in the pool up to four. All judges appointed to the standing pool shall remain in the pool until replaced. In the event a case is referred to the pool, any judge who is a member of the pool and who is a judge of the Tribal Court or Circuit Court from which the referral arises shall be removed from the pool for purposes of that referral. The parties shall then be given the opportunity to mutually decide on the judge. If the parties cannot agree on a judge, each party shall be allowed to preemptorily strike one judge from the pool, and of those remaining one judge shall be drawn at random. That judge shall join the two judges from the courts where the actions are pending, and a hearing de novo before all three judges will be scheduled. At the close of the hearing, the judges shall deliberate and decide as set forth in section 6(b), above.
[7] The parties dispute whether Teague quit or was fired from his position as casino general manager. However, this issue is not relevant to the resolution of the central issue in this case, regarding full faith and credit under Wis. Stat. § 806.245.
[8] The circuit court found that the Band operated its casino, an economic enterprise, under its corporate charter not under its constitution. Since the corporate charter contained a "sue or be sued" clause, the Band could not invoke sovereign immunity in regard to its casino operations. Additionally, the circuit court found that even if the Band was acting in the capacity of a government, it implicitly waived its sovereign immunity by agreeing to an arbitration clause in both agreements, given that a dispute could not be arbitrated without this waiver.
[9] The Band claimed, as an affirmative defense, that section 5(f) of the federal corporate charter requires that contracts over $1,000 in any one year be approved by the United States Department of Interior before they can be binding on the Band, and that the agreements here were never submitted and never received approval. The Band also asserted that the corporate charter requires tribal council approval, which was not granted in regard to the 1995 employment agreement. Apparently, there was also an issue raised, at least in the tribal court, over whether the 1993 agreement approved by the tribal council was different than the one executed by the tribal chairman.
[10] In general, the notion of comity refers to "the respect a court of one state or jurisdiction shows to another state or jurisdiction in giving effect to the other's laws and judicial decisions." Black's Law Dictionary 262 (7th Ed. 1999). For example, in family law and child custody matters, Wis. Stat. § 822.06(3), requires a Wisconsin state court to stay its proceedings and communicate with a court of another state when the same action is pending in both courts. In regard to a tribal court, comity refers to the principle of allowing a tribal court to determine its own jurisdiction in the first instance. See Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9 (1987). It is this principle that we discussed in Teague II and prompted the establishment of the Tribal/State Protocol for the Judicial Allocation of Jurisdiction Between the Four Chippewa Tribes of Northern Wisconsin and the Tenth Judicial Administrative District of Wisconsin. The doctrine of tribal exhaustion was established as a matter of comity. Teague II., 236 Wis. 2d at 384. This doctrine requires exhaustion of all tribal court remedies before a claim may be entertained by a federal court. See National Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845 (1985).
[11] Teague v. Bad River Band of the Lake Superior Tribe of Chippewa Indians, 229 Wis. 2d 581, 586, 599 N.W.2d 911 (Ct. App. 1999) (Teague I).
[12] See Bad River Tribal Court Findings of Fact, Conclusions of Law and Order for Default Judgment (R. 103:51-55).
[13] As noted previously in footnote 2, the Band raises other arguments. We address the full faith and credit issue raised by the Band, which disposes of the case; therefore, the other arguments need not be addressed.
[14] Teague argues that the circuit court convened the conference as directed by this court, observed mutuality and respect, solicited the views of the tribal court, and expressly found that the parties had contracted for a state forum and that the Band had no contract law.
[15] See the Tribal/State Protocol for the Judicial Allocation of Jurisdiction Between the Four Chippewa Tribes of Northern Wisconsin and the 10th Judicial Administrative District of Wisconsin.
[16] Section 806.245 and the Final Protocol adopted in the Tenth Judicial Administrative District do not conflict with each other. The desired result of the Final Protocol is that the allocation of jurisdiction is to be decided prior to a court rendering a judgment. As a result, § 806.245 would only be triggered when both a tribal court and a circuit court have jurisdiction and one court has rendered a judgment, as in this case. Jurisdictional disputes are addressed by the Final Protocol since it is anticipated that neither court would have yet rendered a judgment. (See Final Protocol, § 4 (all parties who commence an action in a circuit court or a tribal court must disclose whether there is any related action in another court)).
[17] As adopted in Syver, the first to file rule states that when more than one circuit court of this state may have jurisdiction over a matter, the court in which the action is first filed retains jurisdiction. Syver v. Hahn, 6 Wis. 2d 154, 95 N.W.2d 161 (1959).
[18] The conditions are set forth in Wis. Stat. § 806.245(1)(a) to (e).
[19] Section 5(f) of the Charter provides that any contract involving payment of tribal corporate monies in excess of $1,000.00 in any one (1) year must be approved by the Secretary of the United States Department of Interior or his duly authorized representative. In November 1993 the Defendant negotiated an employment contract (the 1993 Contract) with the Band to act as Gaming Manager at the Band's Casino. See Findings of Fact numbers 7 and 14. Bad River Findings of Fact, Conclusions of Law, and Order for Default Judgment (R. 103:51-55).
[20] In the Findings of Facts, Conclusions of Law and Order for Default Judgment, Judge Smart concluded that:

1. The Defendant was served with a Summons and the Second Amended Complaint on March 25, 1997; and
2. The Defendant failed to appear at the time stated in the Summons, thus warranting the entry of default judgment pursuant to Rule 112.2 of the Band's Rules of Civil Procedure. Bad River Findings of Fact, Conclusions of Law, and Order for Default Judgment (R. 103:51-55).
[21] See Finding of Fact of the Bad River Tribal Court Findings of Fact, Conclusions of Law and Order for Default Judgment (Finding of Fact number 3) (R. 103:51-55).
[22] When Teague was served with the tribal court's process, he had legal remedies available to avoid the effects of a default judgment. He could have filed an answer, moved for a stay, moved to dismiss, or litigated the merits. See Ness v. Digital Dial Communications, Inc., 227 Wis. 2d 592, 596 N.W.2d 365 (1999).
[23] As discussed earlier, Wis. Stat. § 806.245 requires that the tribe which creates the tribal court must be organized under 25 U.S.C. 461 to 497, and be a court of record, for a tribal court judgment to be valid. In order for a tribal court judgment to be valid, the tribal court must have personal and subject matter jurisdiction, the judgment must be final, on the merits, procured without fraud, duress or coercion, in compliance with tribal court procedures, and the tribal court must comply with the Indian Civil Rights Act of 1968, 25 U.S.C. § 1301 to 1341. Nowhere in this statute does it require or give the state court authority to inquire further into the structure or rules of the tribal court. This statute ensures that a tribal court structure is in place, while recognizing tribal authority in these matters.
[1] Justices William A. Bablitch, Ann Walsh Bradley, and Diane S. Sykes join this opinion. This opinion is the majority opinion.
[2] For a discussion of these tensions, see Judith Resnik, Multiple Sovereignties: Indian Tribes, States, and the Federal Government, 79 Judicature 118 (Nov./Dec. 1995).
[3] Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians, 2000 WI 79, 236 Wis. 2d 384, 612 N.W.2d 709 (Teague II).
[4] Teague II, 236 Wis. 2d 384, ¶ 33 ("We are faced, then, with the unfortunate choice of ratifying either a "race to the courthouse" or a "race to judgment," a situation the legislature appears not to have contemplated in the enactment of Wis. Stat. s. 806.245. Either choice would produce undesirable and unreasonable results, which we presume the legislature did not intend to encourage by the adoption of the tribal full faith and credit statute.").
[5] Teague II, 236 Wis. 2d 384, ¶¶ 37-39.
[6] Lead op., ¶ 22 n.16.
[7] Lead op., ¶ 25.
[8] Teague II, 236 Wis. 2d 384, ¶ 33.
[9] Wisconsin Stat. § 806.245(1)(e) provides that full faith and credit will be accorded to the laws and judgments of a tribal legal system only if the tribal legal system accords full faith and credit to the laws and judgments of the state.
[10] See lead op., ¶ 22 n.16.
[11] In re Steffke's Estate, 65 Wis. 2d 199, 203, 222 N.W.2d 628 (1974) (quoting Hughes v. Fetter, 257 Wis. 35, 39, 42 N.W.2d 452, 454 (1950), rev'd, 341 U.S. 609 (1951)).
[12] The cooperative protocol adopted by the 10th Judicial District and tribes is an important advance in this jurisdictional dilemma. See also Stanley G. Feldman & David L. Withey, Resolving State-Tribal Jurisdictional Dilemmas, 79 Judicature 154 (Nov./Dec. 1995).
[13] Janet Reno, A Federal Commitment to Tribal Justice Systems, 79 Judicature 113, 113-14 (Nov./Dec. 1995) (quoting Indian Tribal Justice Act, 25 U.S.C. 3601); see also Douglas B.L. Endreson, The Challenges Facing Tribal Courts Today, 79 Judicature 142 (Nov./Dec. 1995); Raymond L. Niblock & William C. Plouffe, Federal Courts, Tribal Courts, and Comity: Developing Tribal Judiciaries and Forum Selection, 19 U. Ark. Little Rock L. Rev. 219, 227 (1997).
[14] I have compiled these factors from a number of sources discussing comity, allocation of jurisdiction, and enforcement of judgments. See, e.g., Niblock & Plouffe, supra note 14, at 237-39; Tribal/State Protocol for the Judicial Allocation of Jurisdiction Between the Four Chippewa Tribes of Northern Wisconsin and the Tenth Judicial District of Wisconsin (2001) (available online at http://www.wicourts.gov/media/pdf/ tribal%20agree.pdf).
[15] See David S. Clark, State Court Recognition of Tribal Court Judgments: Securing the Blessings of Civilization, 23 Okla. City U. L. Rev. 353 (1998):

Wisconsin and Wyoming enacted what they call full faith and credit statutes to recognize the judgments of their own state tribes, but in actuality these statutes function according to a comity standard. These states require that the tribes maintain an impartial court system according to an idiosyncratic list of four elements and that the tribal court in the case at hand correctly apply its own procedural law (which can be examined sua sponte by the court in Wisconsin).
id. at 368-369 (citations omitted); Stacy L. Leeds, Cross-Jurisdictional Recognition and Enforcement of Judgments: A Tribal Court Perspective, 76 N.D. L. Rev. 311 (2000):
Although many states dignify their policy with a "full faith and credit" title, most are more akin to international comity standards.
. . . .
Wisconsin's legislature also inappropriately labeled its tribal court recognition statute "full faith and credit," when the statute more accurately embodies principles of comity. The Wisconsin statute mirrors the Wyoming statute . . . .
id. at 341, 344; Carol Tebben, Trifederalism in the Aftermath of Teague: The Interaction of State and Tribal Courts in Wisconsin, 26 Am. Indian L. Rev. 177 (2001-02):
Wisconsin's tribal full faith and credit statute encourages state court judges to honor decisions made in tribal courts, but allows state judges to evaluate tribal courts . . . and to grant full faith and credit on a discretionary basis. In this sense, the statute is not written in the words of a full faith and credit requirement.
id. at 184 (citations omitted).
[16] See Teague II, 236 Wis. 2d 284, ¶ 28 (citing Darby L. Hoggatt, The Wyoming Tribal Full Faith and Credit Act: Enforcing Tribal Judgments and Protecting Tribal Sovereignty, 30 Land & Water L. Rev. 531, 552-56 (1995); Recognition of Tribal Orders in Wisconsin: An Overview of State and Federal Law, Indian Law News (State Bar of Wisconsin, Spring 1999)).
[17] See William C. Canby, Jr., American Indian Law 173 (2d ed. 1988); Felix S. Cohen, Handbook of Federal Indian Law 385 (1982); Fred L. Ragsdale, Jr., Problems in the Application of Full Faith and Credit for Indian Tribes, 7 N.M. L. Rev. 133 (1977).
[18] See 25 U.S.C. § 1302(8).
[1] For an excellent statement of the facts in this matter, see Teague v. Bad River Band of Chippewa Indians, 2000 WI 79, ¶¶ 4-16, 236 Wis. 2d 384, 612 N.W.2d 709 (Teague II).
[2] In its Findings of Fact, Conclusions of Law and Order for Default Judgment, the Bad River Tribal Court found:

Section 5(f) of the Charter provides that any contract involving payment of tribal corporate monies in excess of $1,000.00 in any one (1) year must be approved by the Secretary of the United States Department of Interior or his duly authorized representative;
. . . .
The 1995 Contract was never submitted to the United States Department of Interior, and never received approval from that Department . . . .
The tribal court concluded that: "Because the 1995 Contract was not submitted to or approved by the Secretary of the United States Department of Interior or his representative, the Contract is void and not binding on the Bad River Band."
[3] According to a memo from Shaun Haas, Senior Staff Attorney of the Wisconsin Legislative Council, to Representative David Travis, Chair of the Assembly Committee on Criminal Justice and Public Safety, the amendment limiting the bill to the Menominee Tribe was supported by the Wisconsin Department of Justice, represented by Assistant Attorney General John Niemisto. Haas wrote:

Assembly Amendment 1 makes the Bill applicable only to the Menominee Indian Tribe. The Amendment responds to criticism that only the Menominee Tribe presently has the judicial capacity to implement the full faith and credit provisions of the Bill and that the Bill should apply to other tribes only when their judicial branches have reached a similar advanced stage of development.
Wisconsin Legislative Council Staff Memorandum from Shaun Haas to Representative David Travis dated February 11, 1982, of Legislative Council file on 1981 A.B. 825.
[4] See Wis. Stat. § 806.245(1)(e). This language was requested by the Wisconsin Department of Justice. See Legislative Reference Bureau drafting file on chapter 369, Laws of 1981.
[5] Article IV, Section 1 of the United States Constitution reads as follows: "Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records and proceedings shall be proved, and the effect thereof."
[6] The four tribes were listed as "Forest County Potawatomi, Oneida, Stockbridge-Munsee, Winnebago [now Ho-Chunk]." Wisconsin Legislative Council, Report No. 8 to the 1989 Legislature, p. 17.
[7] By contrast, Wis. Stat. § 806.245(1) appears to state that the acts of any Indian tribal legislative body shall have the same full faith and credit in the courts of this state as do the acts of any other governmental entity.